# EXHIBIT A



## LAW OFFICES OF DAVID J. HOEY, P.C.

David J. Hoey*
Dale B. Andrews*
Richard T. Bromby *of counsel*
Krzysztof G. Sobczak *of counsel***
   *also admitted in New Hampshire*
  **also admitted in Illinois*

352 Park Street, Suite 105
North Reading, MA 01864
T: (978) 664-3633
F: (978) 664-3643
www.hoeylaw.com

February 11, 2015

**Via First Class Mail, Certified, RRR**
**Article No.: 7012 2210 0001 9866 2915**

FEB 23 2014

Sedgwick Claims Management Services, Inc.
1100 Ridgeway Loop Rd,
Memphis, TN 38120

RE:   *Calandro, Administrator v. Sedgwick Claims Management Services, Inc.;*
     *SUCV2014-03806-D*

Dear Sir/Madam:

Pursuant to the Massachusetts Long-Arm statute, *Mass. G. L. ch 223A, sec. 3 et seq.*, enclosed please find, in connection with the above-referenced case, copies of the following documents:

1. Summons;
2. Complaint;
3. Civil Action Cover Sheet;
4. Scheduling Order For F Track;
5. Notice Of Taking MRCP Rule 30(b)(6) Deposition;
6. Plaintiff's First Set Of Interrogatories To The Defendant Sedgwick Claims Management Services, Inc.;
7. Plaintiff's First Request For Production Of Documents Propounded To Defendant, Sedgwick Claims Management Services, Inc.; and
8. Plaintiffs' First Request For Admissions To Defendant, Sedgwick Claims Management Services, Inc.

Thank you for your prompt attention to this matter.

Very truly yours,

Krzysztof G. Sobczak

/kgs
Enclosures

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 2014-03806

Gary Calandro, as Administr-
ator of the Estate of Genevieve
Calandro                              , Plaintiff(s)

v.

Sedgwick Claims Management
Services, Inc.                        , Defendant(s)

## SUMMONS

To the above-named Defendant: Sedgwick Claims Management Services, Inc.

You are hereby summoned and required to serve upon David J. Hoey, Esquire
The Law Office of David J. Hoey, P.C.
plaintiff's attorney, whose address is 352 Park St. #105, N. Reading, MA 01864 , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant , Esquire, at Boston, the ___5th___ day of
December , in the year of our Lord two thousand fourteen .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 2014-03806

Garrick Calandro, as Administrator of the Estate of Genevieve Calandro, Plff(s).

v.

Sedgwick Claims Management Services, Inc., Deft(s).

## SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ____________, 201__, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

____________________

____________________

____________________

Dated: ____________, 201__ ____________________

N.B. TO PROCESS SERVER:–
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

| |
|---|
| ,201 . |

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                               CASE NO.:   **14-3806**

GARRICK CALANDRO, AS ADMINISTRATOR )
OF THE ESTATE OF GENEVIEVE CALANDRO, )
*PLAINTIFF,* )
 )
V. )
 )
 )
SEDGWICK CLAIMS MANAGEMENT )
SERVICES, INC., )
*DEFENDANT.* )

## COMPLAINT

**PARTIES**

1.      The Plaintiff, Garrick Calandro, is the Administrator of the Estate of Genevieve
Calandro, appointed in the Commonwealth of Massachusetts, by the Essex County Probate and
Family Court (hereinafter the "Plaintiff" or the "Estate").

2.      Genevieve Calandro, was a resident, as defined by 940 C.M.R. §4.01, of Radius
HealthCare Center at Danvers located at 56 Liberty Street in Danvers, Essex County,
Massachusetts, a nursing home within the meaning of 940 C.M.R. §4.01, et. seq.

3.      Genevieve Calandro passed away on August 16, 2008.

4.      On August 16, 2011, Plaintiff brought wrongful death suit concerning the care and
treatment of Genevieve Calandro in Middlesex Superior Court against defendants Radius
Danvers Operating, LLC, Radius Management Services, Inc., Radius Management Services II,
Inc., Roush & Associates, Inc., and Radius BD, Inc. (hereinafter collectively the "Radius
Defendants") which was assigned docket number MICV2011-02874-D (hereinafter the
"Underlying Action").

5.      Radius Defendants were alleged to be the corporate entities primarily responsible for the
operation, ownership, management, and control of Radius HealthCare Center at Danvers located
at 56 Liberty Street in Danvers, Massachusetts, a skilled nursing home as defined by 940 C.M.R.
§4.01, et. seq. (hereinafter "Radius Danvers").

6.      Upon information and belief, Pacific Insurance Company, Limited ("Pacific") is an
insurer which issued at least one of the liability insurance policies available to the Radius
Defendants in the underlying action.  Specifically, Pacific is identified as the insurer on Policy
No. ZY 0004802, in effect from June 1, 2008 to June 1, 2009, which policy was produced by
defense counsel on April 4, 2014 in the Underlying Action.  Pacific is located in Hartford,

Connecticut and according to The Hartford's website has a business address at One Hartford Plaza, Hartford, CT, one it shares with The Hartford.

7.      Upon information and belief, First State Management Group, Inc. ("First State") was Pacific's duly authorized agent for service of process in Massachusetts, as identified in Policy No. ZY 0004802 produced on April 4, 2014. Upon information and belief, First State stopped conducting business in Massachusetts in September, 2011 and designated Beazley Group, at 30 Batterson Park Road, Farmington, CT as the entity to receive service of process.

8.      Upon information and belief, The Hartford, also known as The Hartford Financial Services Group, Inc., is the parent company of the family of Hartford companies and their affiliates, offering various insurance and other financial products and services. Hereinafter Pacific, First State and The Hartford are collectively referred to as the "Hartford".

9.      Upon information and belief, defendant **Sedgwick Claims Management Services, Inc.** ("Sedgwick") is the authorized agent and claims manager and administrator for Hartford and for the policy (or policies) applicable to the Radius Defendant in the Underlying Action.

10.     Defendant **Sedgwick Claims Management Services, Inc.** ("Sedgwick") is a for-profit Illinois corporation with a principal office location at 1100 Ridgeway Loop Rd, Memphis, TN 38120.

11.     Sedgwick, as of February 13, 1997, is registered to conduct business in Massachusetts and Sedgwick's Massachusetts registered agent is: C T CORPORATION SYSTEM, located at 155 FEDERAL STREET STE 700, BOSTON,   MA   02110, in Suffolk County.

12.     Upon information and belief, Sedgwick has a Massachusetts office located at 40 Court Street, Suite 500, Boston, MA 02108, in Suffolk County.

13.     Upon information and belief, Ms. Mary L Blair, of Sedgwick, 40 Court Street, Suite 500, Boston, MA was the Claims Manager assigned to the Underlying Action.

14.     Attorney Lawrence J. Kenney, Jr. of/and Sloane and Walsh LLP, Boston, MA was defense counsel (hereinafter the "Defense Counsel") retained by the Sedgwick to defend the Underlying Action on behalf of the Radius Defendants.

FACTS

15.     Sedgwick exercised day to day management of the Underlying Action for Hartford.

16.     Sedgwick, at all times relevant hereto, was responsible for the supervision of Defense Counsel in Underlying Action for Hartford.

17.     Sedgwick is responsible for all the actions of its retained Defense Counsel in the Underlying Action.

18.     As outlined in the pleadings in the Underlying Action (incorporated herein by reference), Plaintiff brought six distinct claims against the Radius Defendants: claims against Radius Danvers Operating, LLC (the Licensee of the nursing home) in (1) negligence and medical malpractice, (2) wrongful death, and (3) gross negligence; and claims against Radius Management Services, Inc., Radius Management Services II, Inc., Roush & Associates, Inc., and Radius BD, Inc. (owners, managers, and operators of the nursing home, referred to collectively as the Radius "Corporate Defendants") in (4) corporate negligence, (5) wrongful death, and (6) gross negligence. The Civil Action Cover Sheet listed the damages as "in excess of $500,000.00."

19.     After commencement of the Underlying Action, Sedgwick, as the third party claim administrator for Hartford responsible for adjusting the claim, hired Lawrence Kenney of Sloane & Walsh to defend the Radius Defendants entities. Defense Counsel defended the Radius Defendants through the conclusion of the Underlying Action trial, which occurred in the Middlesex Superior Court from July 16 to 21, 2014.

20.     Since the damages in this matter were mostly non-economic in nature, in order to avoid prolonged litigation on or about October 12, 2011, before serving the Complaint on the Radius Defendants, Plaintiff made the initial demand on the Radius Defendants in the amount of $500,000.00 , and tendered it to the Radius Defendants' (Sedgwick retained) counsel.

21.     Defense Counsel responded on October 14, 2011, claiming that all of Plaintiff's claims were unsupported and left "Radius Danvers little choice but to vigorously defend th[e] claim."

22.     Upon information and believe neither Sedgwick nor Defense Counsel investigated the claims presented on or about October 12, 2011. Plaintiff's only option was to proceed with the civil action.

23.     In 2012 Plaintiff moved to amend the Complaint to add Dr. David Wahl as a party-defendant and to clarify and expand upon the claims against the Radius Defendants. The court allowed that motion, in part because there was no opposition, on July 18, 2012.

24.     Throughout the litigation in the civil action, however, no discovery responses were forthcoming from the Radius Defendants, as the Sedgwick retained Defense Counsel represented that the key players from the various Radius Defendants were difficult to identify, locate, and contact.

25.     On or about March 12, 2013 Defense Counsel was served with Mass.R.Civ.P Rule 34 document request for all insurance policies available to the Radius Defendants in this Underlying Action.

26.     The Rule 34 request was never responded to by Defense Counsel.

27.    During the November 13, 2013 deposition of Dr. Wahl (first deposition to be taken in the case as Radius Defendants refused to identify relevant parties or witnesses), in the face of clear liability on behalf of Radius Defendants and Dr. Wahl, Plaintiff's counsel made a one-time, non-negotiable oral demand on all parties in the amount of $500,000.00; at that time neither of the defendants had disclosed what the applicable insurance policies and limits were, thus Plaintiff reiterated the initial demand amount.

28.    Throughout the litigation process Sedgwick was aware that Defense Counsel was not producing any discovery or responses to the Plaintiff.

29.    In the ensuing months, no response to this demand was ever made by Hartford (or its claims management representative Sedgwick), until a February 6, 2014 offer via e-mail from Dr. Wahl's insurer, on behalf of all of the defendants, in the amount of $275,000.00.

30.    On February 17, 2014, Plaintiff's counsel rejected the $275,000.00 offer, withdrew the $500,000.00 demand, and proceeded with discovery against all parties.

31.    With the case scheduled for a March 27, 2014 Status Conference and hearing on a number of discovery disputes, Plaintiff made independent settlement demands on the separate defendants, for $1,000,000.00 each, based on the representation that those were the limits of the available insurance policies,  prompted by the disclosure of the ZY 0004802 policy.

32.    It has been since discovered that the ZY 0004802 Hartford policy was NOT the only policy available to the Radius Defendants.

33.    Sedgwick made no offers on behalf of Hartford and its policy(ies).

34.    The Plaintiff continued with discovery, including noticing depositions of the Radius Defendants, and their agents; however, the Radius Defendants did not appear at those depositions.

35.    Upon information and belief the Radius Defendants (their officers and directors) were never notified of these depositions (and any other prior discovery requests) by the Sedgwick retained Defense Counsel.

36.    On March 27, 2014, counsel did produce the declaration page for the ZY 0004802 Hartford policy, and later the entire policy document.

37.    On April 17, 2014 defense counsel wrote to Plaintiff's counsel saying that the Radius Defendants' designees would not appear for depositions and he "intend[ed] to stipulate to fault on behalf of these corporations."

38.    On or about May 14, 2014 Dr. Wahl's insurer (Coverys) respond to Plaintiff's demand, in writing, without any copy to the Radius Defendants' Defense Counsel or Sedgwick claim

representative. Coverys later made a settlement offer on behalf of its client only, and the case against Dr. Wahl settled before trial.

39.     With the Radius Defendants, the only remaining defendants, not identifying or producing witnesses, not showing up for the duly scheduled Rule 30(b)(6) depositions, and with no offers from the Hartford, on July 3, 2014 counsel reiterated his $1,000,000.00 demand, informed defense counsel of the settlement with Dr. Wahl, and again asked for an independent offer, on behalf of the Radius Defendants only, before the July 9, 2014 Final Trail Conference.

40.     Sedgwick made no offers on Hartford's behalf

41.     Trial began on July 16 and lasted until July 22, 2014; the Sedgwick representative was present every day during trial, yet still made no offers.

42.     The jury returned a verdict for the Plaintiff allowing one million four hundred and twenty five thousand dollars ($1,425,000.00) in compensatory damages; the jury also found that the Radius Defendants had been grossly negligent. On the next day, after the court re-opened the evidence and one of the Radius Defendants' officers—subpoenaed to the Court by the Plaintiff— testified, the jury returned a second verdict for twelve million five hundred fourteen thousand six hundred and five dollars ($12,514,605.00) in punitive damages.

43.     On July 25, 2014, Plaintiff's counsel wrote to the Radius Defendants' Sedgwick retained and supervised Defense Counsel, with a copy to Sedgwick's claim representative, asking him to identify and produce ALL insurance policies applicable to ALL five Radius Defendants, as it was likely that the only policy identified thus far (ZY 0004802) was NOT the only policy available.

44.     For example, policy ZY 0004802, on the face, covers corporations, limited liability corporations, and partnerships associated with four nursing home locations; however, that policy did not cover co-defendants Radius Management Services II, Inc. and Roush & Associates, Inc., and their officers & directors. In post verdict depositions, it has been discovered that other insurance policies were, or could have been, available to Radius Defendants.

45.     Neither Sedgwick, nor its retained Defense Counsel responded to that request concerning all insurance policies.

46.     Instead, on July 31, 2014, Defense Counsel, made a written "offer of settlement" in the amount of $1,000,000.00 to settle "all claims or potential claims against the named defendants and all of their agents, servants, employees, insurers, parent or affiliated companies or persons, subsidiaries, predecessors, successors, and all other persons of every kind and nature in the customary and usual manner."

47.     Upon information and demand this "offer of settlement" was made at direction of or with approval of Sedgwick and its agents.

48.     Moreover, this letter reiterated that the $1,000,000.00 policy was the only coverage available to these Radius Defendants.

49.     On August 1, 2014 the Court entered Judgment in the amount of fourteen million four hundred forty seven thousand nine hundred six dollars and fifty one cents ($14,447,906.51), with pre-judgment interest and costs.

50.     On August 11, 2014 Defense Counsel served his post-trial motions on the Plaintiff, as well as motion to amend judgment concerning the Wahl settlement.

51.     Plaintiff opposed said motions.

52.     On September 19, 2014 Court denied the Radius Defendants' post-trial motions, but allowed the motion to amend the judgment concerning the prior settlement amount.

53.     On October 10, 2014 Court amended the judgment, nunc pro tunc to August 1, 2014 to the amount of $14,196,427.04.

54.     With the judgment unsatisfied, and the post-trial motions denied, on September 30, 2014 Plaintiff served on Hartford and Sedgwick his demand letter for relief in accordance with G.L. c. 93A, §§ 2, 9 (the "Consumer Protection Act") and G.L. c. 176D, § 3(9) (the "Unfair Claims Settlement Practices Act") for the bad faith failure of the Hartford, and its agent Sedgwick in conjunction with Sedgwick retained Defense Counsel, to investigate, evaluate, adjust, administrate, or otherwise handle Plaintiff's claim in the Underlying Action under the insurance policies that might provide coverage for Calandro's claims (hereinafter the "93A Demand"). Copy of said letter is attached hereto as **Exhibit A** and incorporated herein by reference.

55.     On October 2, 2014 Sedgwick received and signed for Plaintiff's 93A Demand letter.

56.     On October 30, 2014 Sedgwick, via counsel, responded to the 93A Demand with an offer amount that was not reasonable with respect to the damages outstanding.

57.     Subsequently, Plaintiff has settled his claims against Hartford, however, specifically excluding all claims against Sedgwick, Lawrence Kenney, Esq. and/or Sloane & Walsh, and their officers, directors, owners, shareholders, members, managers, trustees, beneficiaries, agents, representatives, employees, servants, attorneys, insurers, administrators, executors, heirs, successors and assigns.

<div align="center">

COUT I
Chapter 93A – 176D violation

</div>

58.     Plaintiff hereby realleges and repeats paragraphs 1 through 56 of this Complaint, in the same manner and fashion as if expressly set forth herein.

59.     Sedgwick, as a third party claims administrator for Hartford, owed Plaintiff a duty of care to effectuate fair and prompt settlement of Plaintiff's claims in the Underlying action.

60.     Sedgwick breached said duty of care, in its, and its retained and supervised Defense Counsel's both pre and post verdict conduct.

61.     Specifically, Sedgwick violated c. 176D, § 3(9) by:

    a.  misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue by failing to disclose all applicable insurance policies;

    b.  failing to acknowledge and act reasonably promptly with respect to Plaintiff's claim by;
       i.  failing to respond timely to Plaintiff's demand;
      ii.  failing to respond to Plaintiff's discovery requests during litigation;
    iii.  failing to keep its insured appraised of Plaintiff's demand, the status of litigation, the claims being brought, and that the trial was scheduled to take place;

    c.  failing to adopt and implement reasonable standards for the prompt investigation of Plaintiff's claim in the Underlying Action, as evidenced by the lack of any independent offers from Sedgwick despite the apparently long held plan (over a year before trial) to concede liability and having no defense to the negligence claim;

    d.  refusing to pay Plaintiff's claim without conducting a reasonable investigation based upon all available information as evidenced by the lack of any documented efforts to gather available information from the Radius Defendants and produce it during discovery;

    e.  failing to effectuate a prompt, fair, and equitable settlement of Calandro's claim when liability had become reasonable clear;

    f.  failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy/coverage in order to influence settlements under other portions of the insurance policy/coverage, as evidenced by the post-judgment settlement offer of only $1,000,000, alleging it is from the only policy but conditioning it as settlement of all claims for which liability exceed more than 50-70 times that amount and other policies/assets are likely available;

    g.  pursuing meritless post-judgment motions; and

    h.  failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the offer of a compromise settlement, as detailed above.

62.     As a result of Sedgwick's violation of c. 176D, § 3(9), Sedgwick violated c. 93A and Plaintiff suffered damages.

63.     Plaintiff's damages include, but are not limited to, the entire amended judgment amount of $14,196,427.04 and post judgment interest at rate of 12% per annum, until said judgment is satisfied in full.

64.     As of the date of filing this suit, judgment being unsatisfied, said amounts to $14,789,306.22.

65.     Sedgwick's pre and post verdict violations of chapters 93A and 176D where willful and/or knowing.


        **WHEREFORE,** Plaintiff prays for judgment in his favor and against defendant Sedgwick Claims Management Services, Inc. for double or treble the Underlying Action judgment amount, plus all attorneys' fees and costs.


                                        For the plaintiff,
                                        By his attorney,



                                        David J. Hoey, Esq. BBO # 628619
                                        Krzysztof G. Sobczak, Esq. BBO # 680813
                                        *Law Offices of David J. Hoey, P.C.*
                                        352 Park Street, Suite 105
                                        North Reading, MA 01864
                                        T: (978) 664-3633
                                        F: (978) 664-3643
                                        E: dhoey@hoeylaw.com
                                        E: ksobczak@hoeylaw.com

Date:    December 5, 2014



## LAW OFFICES OF DAVID J. HOEY, P.C.

David J. Hoey*
Dale B. Andrews*
Richard T. Bromby *of counsel*
Krzysztof G. Sobczak *of counsel***
   *also admitted in New Hampshire
   **also admitted in Illinois

352 Park Street, Suite 105
North Reading, MA 01864
T: (978) 664-3633
F: (978) 664-3643
www.hoeylaw.com

September 30, 2014

**Via Express Mail, Return Receipt Requested**

President or Chief Executive Officer
*The Hartford*
One Hartford Plaza
Hartford, CT 06155
**Article No.: 9114 9012 3080 1065 0520 89**

President or Chief Executive Officer
*Pacific Insurance Company, Limited*
One Hartford Plaza
Hartford, CT 06155
**Article No.: 9114 9012 3080 1065 0520 96**

President or Chief Executive Officer
*First State Management Group, Inc.*
c/o Beazley Group
30 Batterson Park Road
Farmington, CT 06032
**Article No.: 9114 9012 3080 1065 0520 72**

President or Chief Executive Officer
*Sedgwick Claims Management Services, Inc.*
  As Agent for The Hartford
1100 Ridgeway Loop Rd, Ste 200
Memphis, TN 38120
**Article No.: 9114 9012 3080 1065 0521 02**

RE:   *Calandro v. Radius Management Services II, Inc., et al.;* MICV2011-02874-D
      Insured:          *Radius Management Services, Inc., et al.*
      Policy Number:    ZY 0004802

### *DEMAND FOR RELIEF PURSUANT TO CHAPTER 93A, SECTIONS 2 AND 9 AND CHAPTER 176D, SECTION 3(9) OF THE MASSACHUSETTS GENERAL LAWS*

Dear Executives:

I write on behalf of Garrick Calandro, as Executor of the Estate of Genevieve Calandro ("Plaintiff" or "Calandro"), to demand relief in accordance with G.L. c. 93A, §§ 2, 9 (the "Consumer Protection Act") and G.L. c. 176D, § 3(9) (the "Unfair Claims Settlement Practices Act,"). Plaintiff's claims arise out of your violations of both Acts stemming from Calandro's bodily injury and wrongful death claims culminating in the $13.9 million jury verdict for our client in Middlesex Superior Court Civil Action Number 2011-02874-D on July 21 and 22, 2014(the "civil action").

As you well know, the Consumer Protection Act holds a corporation responsible for unfair and deceptive business practices; it may subject a corporate wrongdoer to double or treble



**HOEYLAW**

LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 2 of 13

damages, attorney's fees, and costs if the wrongdoer's act or practice was willful or knowing, or if the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the practice complained of violated the Consumer Protection Act. A violation of any provision of G.L. c. 176D, § 3(9) is a *per se* violation of G.L. c. 93A, § 2.

Plaintiffs current claims arise out of the bad faith failure of the Hartford, together with its subsidiary, Pacific Insurance Company, Limited, its agent (Sedgwick CMS) and in conjunction with insurance-defense counsel,[1] to investigate, evaluate, adjust, administrate, or otherwise handle Calandro's claim under the referenced commercial liability insurance policy, as well as any other insurance policy that might provide coverage for Calandro's claims.


## Plaintiff's Claims

Calandro seeks relief under both the Consumer Protection Act and the Unfair Claims Settlement Practices Act because of the following violations by the Hartford:

1. misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, in violation of G.L. c. 176D, § 3(9)(a);

2. failing to acknowledge and act reasonably promptly upon communications with respect to Calandro's claim, in violation of G.L. c. 176D, § 3(9)(b);

3. failing to adopt and implement reasonable standards for the prompt investigation of Calandro's claim, in violation of G.L. c. 176D, § 3(9)(c);

4. refusing to pay Calandro's claim without conducting a reasonable investigation, based upon all available information, in violation of G.L. c. 176D, § 3(9)(d);

5. failing to effectuate a prompt, fair, and equitable settlement of Calandro's claim when liability had become reasonable clear, in violation of G.L. c. 176D, § 3(9)(f);

6. failing to settle claims promptly where liability had become reasonably clear, under one portion of the insurance policy in order to influence settlements under another portions of the insurance policy, in violation of G.L. c. 176D, § 3(9)(m); and

7. failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts, or applicable law, for the offer of a compromise settlement, in violation of G.L. c. 176D, § 3(9)(n).

---

[1] See Transcript of the March 27, 2014 Rule 16 and Discovery Disputes. See also *McCourt Co., Inc. v. FPC Properties, Inc.*, 386 Mass. 145, 146 (1982) (firm retained by insurer represents both insurer and insured).



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 3 of 13

**Parties Involved**

Upon information and belief, The Hartford, also known as The Hartford Financial Services Group, Inc., is the parent company of the family of Hartford companies and their affiliates, offering various insurance and other financial products and services, also known collectively (the "Hartford").

Upon information and belief, Pacific Insurance Company, Limited ("Pacific") is an insurer which issued at least one of the liability insurance policies in this matter. Specifically, Pacific is identified as the insurer on Policy No. ZY 0004802, in effect from June 1, 2008 to June 1, 2009, which policy was produced by defense counsel on April 4, 2014.[2] Pacific is located in Hartford, Connecticut and according to The Hartford's website has a business address at One Hartford Plaza, Hartford, CT, one it shares with The Hartford.

Upon information and belief, First State Management Group, Inc. ("First State") was Pacific's duly authorized agent for service of process in Massachusetts, as identified in Policy No. ZY 0004802 produced on April 4, 2014. Upon information and belief, First State stopped conducting business in Massachusetts in September, 2011 and designated Beazley Group, at 30 Batterson Park Road, Farmington, CT as the entity to receive service of process.

Upon information and belief, Sedgwick Claims Management Services, Inc. ("Sedgwick") is the authorized agent and claims manager for The Hartford and for the policy (or policies) applicable to the Calandro matter. Upon information and belief, Ms. Mary L Blair, of Sedgwick, 40 Court Street, Suite 500, Boston, MA was the Claims Manager assigned to the Calandro matter and was present throughout the July, 2014 trial of the civil action.

Attorney Lawrence J. Kenney, Jr. of Sloane and Walsh LLP, Boston, MA was defense counsel retained by the Hartford to defend the civil action.

The defendants in the civil action included Radius Danvers Operating, LLC, Radius Management Services, Inc., Radius Management Services II, Inc., Roush & Associates, Inc., and Radius BD, Inc. (hereinafter collectively the "Radius Defendants"). They were, and are, the corporate entities primarily responsible for the operation, ownership, management, and control of Radius HealthCare Center at Danvers located at 56 Liberty Street in Danvers, Massachusetts, a skilled nursing home as defined by 940 C.M.R. §4.01, et. seq. (hereinafter "Radius Danvers"). Moreover, Radius Danvers Operating, LLC was at all times relevant to the civil action the licensee of Radius HealthCare Center at Danvers, and will be referred herein individually as the "Licensee."

---

[2] Nearly thirteen (13) months after it was initially requested.



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 4 of 13

### Factual Background of the Underlying Claim

As detailed in Calandro's August 16, 2011 Complaint, (Paper No. 1), the First Amended Complaint (filed July 18, 2012, Paper No. 10), Plaintiff's Offer of Proof (filed April 23, 2013, Paper No. 17) and the joint Pre-Trail Memorandum (filed June 17, 2014, Paper No. 27) in the civil action, the terms all of which are incorporated by reference herein,  Plaintiff's claims against Radius Defendants were based on the institutional neglect[3] of his decedent, Genevieve Calandro, who was a resident for months in Radius Danvers. The direct and proximate result of that institutional neglect was her grievous injury, including suffering, pain, loss of dignity, and death. For purpose of brevity, these are summarized below.

Ms. Genevieve Calandro was 90 years old at the time of her December 13, 2007 admission to Radius Danvers. Her past medical history was notable for a number of ailments: hypertension, aortic stenosis, congestive heart failure, proximal supraventricular tachycardia, breast cancer, Parkinson's disease, controlled diabetes, and signs of dementia. She had moved to Radius Danvers from Michigan to be closer to her family. She was incontinent of bowel and bladder, and dependent on staff assistance for virtually everything. She could eat independently, but with assistance. She was described as a social, pleasant, and cooperative person who enjoyed attending group activities. Her skin was intact at the time of admission. She was, however, considered at risk for decubitus ulcers (a/k/a pressure ulcers or "bed sores")[4] because of her confused mental state, incontinence, and decreased mobility.

Upon admission, Ms. Calandro was assigned Dr. David Wahl[5] as her Primary Care Physician, by the Radius Danvers admitting staff.

Her care plan called for monitoring her intake and output, but there was no record that this was ever done. She was on a mechanically altered diet order which was amended near the end of her stay, due to swallowing problems, a condition known as dysphagia. Moreover, because of Ms.

---

[3] Massachusetts regulation defines Neglect as: "failure to provide goods and services necessary to avoid physical harm, mental anguish or mental illness. In determining whether or not neglect has occurred, the following standards shall apply: (1) A patient or resident has been neglected if: (a) An individual has failed to provide appropriate care, treatment or service to the patient or resident; and (b) The individual's failure to provide the treatment, care or service to the patient or resident is either intentional or the result of carelessness; and (c) As a result of the failure to provide the treatment, care or service, the individual has failed to maintain the health or safety of the patient or resident, as evidenced by harm to the patient or resident, or a deterioration in the patient or resident's physical, mental or emotional condition." *105 CMR 155.003.*

[4] Bedsores — also called pressure sores or pressure ulcers — are injuries to skin and underlying tissue resulting from prolonged pressure on the skin. Bedsores most often develop on skin that covers bony areas of the body, such as the heels, ankles, hips and tailbone.

[5] Dr. Wahl was subsequently named as a co-defendant in this case (see First Amended Complaint), but Dr. Wahl, and his insurer (Coverys) settled the claims against them before the jury trial commenced.



Calandro's diabetes, her blood glucose level was to be frequently monitored, so appropriate and timely corrective actions could be taken.

Plaintiff's claims against the Radius Defendants, stated briefly, were that they systematically neglected Ms. Calandro over a period of months, leading up to the first ten days in July, (over the 4th of July holiday) where she was untreated and uncared for with multiple brewing infections, uncontrolled glucose levels, and a worsening, infected, decubitus ulcer (bed sore). The Radius Defendants not only failed to provide skilled care to Ms. Calandro, they failed to provide the most basic care. They violated numerous regulations, state and federal, and their neglect for the care, protection, and safety of Ms. Calandro was glaring.

On July 10, 2008, Ms. Calandro fell out of her wheelchair, apparently unattended and unassisted, while under the care and control of the Radius Danvers. She struck her head in the fall and was sent to a local Emergency Room where the physicians found, in addition to the head contusion, a number of more serious conditions: she was diagnosed with an (1) intracranial intracerebral contusion; (2) acute appendicitis; (3) urinary tract infection with pyuria, and leukocytosis with bandemia; (4) urosepsis; (5) gross dehydration; (6) acute renal failure; (7) uncontrolled diabetes with hyperglycemia, (8) fecal impaction, and (9) non-healing sacral decubitus ulcer, grade III with maceration, fibrinous exudate, odor. Ms. Calandro was in such a medically degenerated condition that surgical intervention was ruled out. Although after the initial round of more conservative treatment Ms. Calandro stabilized somewhat, the infections prevailed and on August 16, 2008 she passed away due to multiple complications; complications which had started at and were caused by her prolonged neglect by the Radius Defendants.

## Procedural Background of the Claim and Settlement

As outlined in the pleadings in the civil action, Plaintiff brought six distinct claims against the Radius Defendants: claims against Radius Danvers Operating, LLC (the Licensee of the nursing home) in (1) negligence and medical malpractice, (2) wrongful death, and (3) gross negligence; and claims against Radius Management Services, Inc., Radius Management Services II, Inc., Roush & Associates, Inc., and Radius BD, Inc. (owners, managers, and operators of the nursing home, referred to collectively as the Radius "Corporate Defendants") in (4) corporate negligence, (5) wrongful death, and (6) gross negligence. The Civil Action Cover Sheet listed the damages as "in excess of $500,000.00."

Since the damages in this matter were mostly non-economic in nature, in order to avoid prolonged litigation on or about October 12, 2011, before serving the Complaint on the defendants, Plaintiff made the initial demand on the Radius Defendants in the amount of $500,000.00[6], and

---

[6] Although it is impossible to put a precise monetary value on any human life (regardless of age), the initial demand presumed the insurance coverage available at that time, as no insurance policies have been disclosed at that time.



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 6 of 13

tendered it to the Radius Defendants' (Hartford retained) counsel.[7] Defense counsel responded on
October 14, 2011, claiming that all of Plaintiff's claims were unsupported and left "Radius
Danvers little choice but to vigorously defend th[e] claim."[8] Calandro's only option was to file the
civil action. The Complaint was served on Radius Defendants with Mr. Jeffrey Landa[9] accepting
in-hand service for all five Radius Defendants.

In 2012 Plaintiff moved to amend the Complaint to add Dr. David Wahl as a party-
defendant and to clarify and expand upon the claims against the Radius Defendants. The court
allowed that motion, in part because there was no opposition, on July 18, 2012.

Throughout the litigation in the civil action, however, no discovery responses were
forthcoming from the Radius Defendants, as the Hartford's defense counsel represented that the
key players from the various Radius Defendants were difficult to identify, locate, and contact.[10]

Thus, in the face of clear liability, during the November 13, 2013 deposition of Dr. Wahl
(first deposition to be taken in the case as Radius Defendants refused to identify relevant parties
or witnesses[11]), Plaintiff's counsel made a onetime, non-negotiable demand on all parties in the
amount of $500,000.00; at that time neither of the defendants had disclosed what the applicable
insurance policies and limits were, thus Plaintiff reiterated the initial demand amount.

In the ensuing months, no response to this demand was ever made by Hartford (or its claims
management representative), until a February 6, 2014 offer via e-mail from Dr. Wahl's insurer, on
behalf of all of the defendants, in the amount of $275,000.00.

On February 17, 2014, Plaintiff's counsel rejected the $275,000.00 offer, withdrew the
$500,000.00 demand, and proceeded with discovery against all parties.

With the case scheduled for a March 27, 2014 Status Conference and hearing on a number
of discovery disputes, Plaintiff made independent settlement demands on the separate defendants,

---

[7] See David J. Hoey correspondence to Lawrence Kenney of October 12, 2011.

[8] See Lawrence Kenney e-mail to David Hoey of October 14, 2011, copied to Mary Blair of Sedgwick CMS.

[9] Jeffrey Landa is/was a Principal in Roush & Associates Inc. He is a Certified Public Accountant with 20+ years of
experience in the field of healthcare finance. Mr. Landa is/was a Vice President for Radius Management Services,
Inc., Radius BD, Inc., and an officer of Radius Danvers Operating LLC.

[10] See Lawrence J. Kenney, Jr. correspondence to David J. Hoey of August 21, 2013, copied to Mary Blair of
Sedgwick.

[11] See note 10.



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 7 of 13

for $1,000,000.00 each, based on the representation that those were the limits of the available insurance policies,[12] prompted by the disclosure of the ZY 0004802 policy.

Hartford made no offers.[13]

The Plaintiff continued with discovery, including noticing depositions of the Radius Defendants, and their agents; the Radius Defendants did not appear at those depositions.[14]  On March 27, 2014, counsel did produce the declaration page for the ZY 0004802 Hartford policy, and later the entire policy[15].  But still with no witnesses to produce, on April 17, 2014 defense counsel wrote to Plaintiff's counsel saying that the Radius Defendants' designees would not appear for depositions and he "intend[ed] to stipulate to fault on behalf of these corporations."

With the Radius Defendants, the only remaining defendants, not identifying or producing witnesses, not showing up for the duly scheduled Rule 30(b)(6) depositions,[16] and with no offers from the Hartford, on July 3, 2014 counsel reiterated his $1,000,000.00 demand, informed defense counsel of the settlement with Dr. Wahl, and again asked for an independent offer, on behalf of the Radius Defendants only, before the July 9, 2014 Final Trail Conference.

Hartford made no offers.

Trial began on July 16 and lasted until July 22, 2014; the Sedgwick representative was present every day, yet Hartford still made no offer.

The jury returned a verdict for the Plaintiff allowing one million four hundred and twenty five thousand dollars ($1,425,000.00) in compensatory damages; the jury also found that the

---

[12] On or about February 19, 2014 Plaintiff received, via e-mail, a copy of Dr. Wahl's applicable insurance declaration page and corresponding policy documentation, indicating a $1,000,000.00 per claim limit. On March 27, 2014, approximately one hour before the Court hearing, Plaintiff received, via e-mail, copy of declaration page (Policy No. ZY 0004802) of what was represented as the only policy available to Radius Defendants, also indicating a $1,000,000.00 per claim limit.

[13] On or about May 14, 2014 Dr. Wahl's insurer (Coverys) respond to Plaintiff's demand, in writing, without any copy to the Radius Defendants' counsel or claim representative.  Coverys later made a settlement offer on behalf of its client only, and the case against Dr. Wahl settled before trial.

[14] See Lawrence J. Kenney, Jr. correspondence to Krzysztof G. Sobczak of April 17, 2014 wherein Mr. Kenney states that no one will be showing up for the depositions because "we intend to stipulate to fault on behalf of these corporations."

[15] Finally produced only three months before the trial was scheduled to commence.

[16] On April 18, 2014 all five of the Radius Defendants failed to show up for the Rule 30(b)(6) depositions, although at this time, it is not certain if their (your) counsel even informed them of these depositions being noticed and scheduled.



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 8 of 13

Radius Defendant had been grossly negligent[17]. On the next day, after the court re-opened the evidence and one of the Radius Defendants' officers—subpoenaed to the Court by the Plaintiff—testified, the jury returned a second verdict for twelve million five hundred fourteen thousand six hundred and five dollars ($12,514,605.00) in punitive damages.

On July 25, 2014, Plaintiff's counsel wrote to the Radius Defendants' lawyer, with a copy to Hartford's agent, Sedgwick's claim representative, asking him to identify and produce ALL insurance policies applicable to ALL five Radius Defendants, as it was likely that the only policy identified thus far (ZY 0004802) was NOT the only policy available.[18] For example, policy ZY 0004802, on the face, covers corporations, limited liability corporations, and partnerships associated with four nursing home locations; however, that policy did not cover co-defendants Radius Management Services II, Inc. and Roush & Associates, Inc., and their officers & directors. Given that all five Radius Defendants are jointly and severally liable on this judgment, there likely were other policies available (including, but not limited to any primary liability policies, any secondary, umbrella, or excess polices, as well as any Errors & Omissions, or Directors and Officers polices that were available to Radius Defendants during this time frame). In fact, the publically available cost reports for Radius Defendants (and Trial Exhibits 15 and 16) show expenses claimed by Radius Defendants for both "Professional Liability" and "Directors & Officers" insurance policies.

Neither Hartford, nor Sedgwick, nor their agents responded to that request.

Instead, on July 31, 2014, Hartford, through defense counsel, made a written "offer of settlement" in the amount of $1,000,000.00 to settle "all claims or potential claims against the named defendants and all of their agents, servants, employees, insurers, parent or affiliated companies or persons, subsidiaries, predecessors, successors, and all other persons of every kind and nature in the customary and usual manner."[19]

---

[17] The Massachusetts Supreme Judicial court recently reiterated that:
"Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence." Aleo v SLB Toys USA Inc., 466 Mass 398, 410 (2013)

[18] See Krzysztof G. Sobczak correspondence to Lawrence J. Kenney, Jr. dated July 25, 2014.

[19] See Lawrence J. Kenney, Jr. correspondence to David J. Hoey and Krzysztof G. Sobczak dated July 31, 2014.



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 9 of 13

Moreover, this letter reiterated that the $1,000,000.00 policy was the only coverage available to these defendants. This representation and the "settlement offer" (in face of Hartford's total liabilities, as subsequently detailed) is in itself another violation of c. 93A/c. 176D, in the post judgment phase of this case.

On August 1, 2014 the Court entered Judgment in the amount of fourteen million four hundred forty seven thousand nine hundred six dollars and fifty one cents ($14,447,906.51, with pre-judgment interest and costs. Today, post-judgment interest continues to accrue at a rate of over $140,000 per month, or approximately $4,600 per diem.[20] The Court later denied the Radius Defendants' post-trial motions (for judgment notwithstanding the verdict, new trial, or remitter)[21] yet no payment of any kind has been tendered on this verdict and judgment.

### Liability Calculus

Liability in this case was, and is, more than "reasonably clear," as that term is used in c. 176D and understanding the word liability "encompasses both fault and damages," *Clegg v. Butler*, 424 Mass. 413, 421 (1997). Defense counsel conceded during discovery that the Radius Defendants were at fault; the damages aspect too had been disclosed. Indeed, all five named Radius Defendants have admitted to liability in this case, and judgment on jury's verdict entered jointly and severally against all five of them.[22]

Moreover, although Hartford's defense counsel did not stipulate to the liability of the five Radius Defendants until June 9, 2014,[23] approximately one month before trial, he had represented in other Court filings that the Radius Defendants had conceded liability over a year earlier, apparently based upon internal investigation.[24]

---

[20] Please note that the post judgment interest will exceed $140,000.00/month even after the Court deducts the $250,000.00 settlement with Dr. Wahl from the judgment amount as per statute post-judgment interest accrues at 12% per year rate (or ~ $1.7M/year), or approximately at 1% per month (or ~ $140K/month), or approximately $5K per day.

. [21] See the September 19, 2014 Court Order.

[22] This is relevant because apparently, all insurance policies available to all five Radius Defendants had not been disclosed, or produced, and thus were not considered when Plaintiff made his last demand of $1,000,000.

[23] See *Stipulation* by defendants, filed on June 11, 2014 as Paper No. 26.

[24] See the July 9, 2014 *Defendants' Motions In Limine, To Preclude Plaintiff From Offering Evidence Of Breaches Of Standards Of Nursing Home Care* (Paper No. 28) wherein Mr. Kenney claims that the concession on liability "admission was given to the plaintiff's attorney almost over a year ago."



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 10 of 13

Regardless of when the Radius Defendants officially conceded liability, the only remaining dispute was the cause of the wrongful death claims and the issue of gross negligence.[25] Based on Hartford's defense counsel's representation alone, therefore, liability and causation with respect to the negligence claims, was not only reasonably clear for more than one year, but undisputed throughout this litigation.

Moreover, liability and causation of the wrongful death claim likewise was reasonably clear for at least one year, despite the fact that Hartford's trial position was that the Radius Defendants' conceded negligence[26] did not cause, or contribute to, Ms. Calandro death. (See note 25 regarding Dr. O'Malley's disclosure). But irrespective of Hartford's trial position, its internal investigation should have revealed the causal link between the Radius Defendants' admitted liability and Ms. Calandro's death. As Hartford's expert conceded at trial, there were several ways in which the Radius Defendants' negligence significantly contributed to the death of Ms. Calandro.[27] Thus, Hartford's "reasonable investigation based upon all available information" should have made it clear that liability and causation were reasonably clear on all of the Plaintiff's claims. The standard to which the Hartford is held in determining if it should have made an offer is an objective one: "whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insured was liability to the plaintiff." *O'Leary-Alison v. Metropolitan P&C Ins. Co.*, 52 Mass. App. Ct. 214 (2001).

As a result of Hartford's willful and knowing violations of Chapter 93A[28] and its unfair claims settlement practices as proscribed by c. 176D, Plaintiff was forced to file and serve this civil action[29] and take it to verdict. Hartford's violations entitles Calandro to a minimum of

---

[25] See the joint *Pre-Trail Memorandum* and the Radius Defendants' disclosure for Dr. O'Malley. He was only expected to testify that "any claimed deficiencies in the nursing care provided at Radius Danvers was not a substantial contributing factor or the proximate cause of Ms. Calandro's ultimate demise, but rather her death was the result of the significant decline in her physical condition after her admission to Cedar Glen, which decline was an anticipated consequence of her advanced age, advanced dementia, and other chronic illnesses described in her medical record." (Paper No. 27, filed June 19, 2014).

[26] And conceded gross negligence; although Radius Defendants claim not to have conceded to gross negligence in their so called "stipulation", the specific acts of negligence conceded to, including conceding the fact that Radius Defendants neglected Ms. Calandro for a period of time over a week when Ms. Calandro was experiencing symptoms of infection, dehydration,  worsening pressure ulcer, and dangerously elevated blood glucose levels, alone could be sufficient for the jury to find gross negligence.

[27] See Trail testimony of Dr. O'Malley, July 21, 2014, at pp 60-80.

[28] See *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486, 494-95 (2012); *Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556, 564 (2001) (violation of c. 176D is a *per se* violation of c. 93A).

[29] See *Clegg v. Butler*, 424 Mass. 413, 419 (1997) ("The duty of fair dealing in insurance settlement negotiations is established by statute under G. L. c. 176D, § 3 (9), and the specific duty contained in subsection (f) is not limited to those situations where the plaintiff enjoys contractual privity with the insurer. The statutes at issue were enacted to

---



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 11 of 13

double and up to treble the amount of the judgment, plus reasonable attorney's fees incurred in the pursuit of this bad faith claim. That is, "the amount of actual damages to be multiplied by the court shall be *the amount of the judgment on all claims* arising out of the same and underlying transaction or occurrence, *regardless of the existence or nonexistence of insurance coverage available in payment of the claim*." *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486, 498 (2012) (emphasis added). Accordingly, if Plaintiff is forced to bring an action under c. 93A/c. 176D, the minimum award against Hartford would be in excess of twenty eight million dollars ($28M), plus attorneys' fees costs and, and the maximum will exceed forty three million dollars ($43M).

That recovery would be in addition to the underlying judgment against the Hartford's insureds, which judgment exceeds $14,000,000 and continues to accrue post-judgment interest at the annual rate of 12%, and for which Hartford has likely both contractual (under the various applicable insurance policies[30]) and tort (first party c. 93A/c, 176D claim) liability. See *Gore v. Arbella Mut. Ins. Co.*, 77 Mass. App. Ct. 518 (2010) (finding that when the insurer fails "to settle for the policy limits, then the insurer will be liable to the insured for the damages exceeding the policy limit" and that such excess award may be subject to doubling or tripling under chapter 93A).

Therefore, Hartford's liability in this matter may be between $50,000,000 and $70,000,000.

<u>**Summary**</u>

Accordingly, Mr. Calandro seeks relief under G.L. c. 93A and c. 176D, § 3(9) due to the following violations by the Hartford:

1. misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue by failing to disclose all applicable insurance policies;

2. failing to acknowledge and act reasonably promptly with respect to Calandro's claim by;
   - failing to respond timely to Plaintiff's demand;
   - failing to respond to Plaintiff's discovery requests during litigation;
   - failing to keep its insured appraised of Plaintiff's demand, the status of litigation, the claims being brought, and that the trial was scheduled to take place;

3. failing to adopt and implement reasonable standards for the prompt investigation of Calandro's claim;

encourage the settlement of insurance claims, and discourage insurers from forcing claimants into unnecessary litigation to obtain relief." citations omitted).

[30] Some of which have yet to been disclosed, yet another c. 176D violation.

Exhibit A



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 12 of 13

-as evidenced by the lack of any independent offers from Hartford despite the long held plan ("almost over a year ago") to concede liability and having no defense to the negligence claim;

4.  refusing to pay Calandro's claim without conducting a reasonable investigation based upon all available information;
    -as evidenced by the lack of any documented efforts to gather available information from the Radius Defendants and produce it during discovery;

5.  failing to effectuate a prompt, fair, and equitable settlement of Calandro's claim when liability had become reasonable clear;
    -as detailed above and as evidenced by the lack of any independent offers from the Hartford despite the long-held plan to concede liability and having no defense to the negligence claim;

6.  failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy/coverage in order to influence settlements under other portions of the insurance policy/coverage;
    -as evidenced by the post-judgment settlement offer of $1,000,000, alleging it is from the only policy but conditioning it as settlement of all claims for which liability exceed more than 50-70 times that amount and other policies/assets are likely available;

and

7.  failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the offer of a compromise settlement, as detailed above.

Please note that there may be additional facts and legal arguments available to Calandro that may come to light if litigation under G.L. c. 93A and 176D goes forward.

**Demand for Relief**

Accordingly, Calandro hereby tenders a settlement demand in the amount of forty million dollars ($40,000,000) for full and final settlement of all claims against the Hartford, Pacific, Sedgwick, the Radius Defendants and all of their agents.

Kindly respond in accordance with the pertinent provisions of G.L. c. 93A, setting forth fully and substantially, in writing, all reasons for your position. G.L. c. 93A entitled you to thirty days in which to respond with a reasonable settlement offer or be subject to double or treble



LAW OFFICES OF DAVID J. HOEY, P.C.

The Hartford
September 30, 2014
Page 13 of 13

damages plus attorneys' fees and costs.  This is a legal document and should be reviewed by your counsel.

Very Respectfully,

DAVID J. HOEY with
KRZYSZTOF G. SOBCZAK

DJH/kgs

cc:
Ms. Mary L. Blair
*Sedgwick CMS*
40 Court Street, Suite 500
Boston, MA 02108

Lawrence J. Kenney, Jr., Esq.
*Sloane & Walsh*
Three Center Plaza
Boston, MA 02108

Charles P. Kindregan, Esq.[31]
*Looney & Grossman LLP*
101 Arch Street
Boston, MA 02110

---

[31] Upon information and belief, Charles P. Kindregan, Esq. is successor counsel for the Radius Defendants for purposes of post-judgment discovery.

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF   SUFFOLK | DOCKET NO. 14-3806 |
|---|---|---|

| PLAINTIFF(S) GARRICK CALANDRO, AS ADMINISTRATOR OF THE ESTATE OF GENEVIEVE CALANDRO | DEFENDANT(S) SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. |
|---|---|

| Plaintiff Atty   David J. Hoey, Law Offices of David J. Hoey, P.C. | Type Defendant's Attorney Name |
|---|---|
| Address   352 Park Street, Suite 105 | Defendant Atty |
| City   North Reading   State  MA   Zip Code  01864 | Address |
| | City   State   Zip Code |
| Tel.   +1 (978) 664-3633   BBO#  628,619 | |

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO.   TYPE OF ACTION (specify)   TRACK | IS THIS A JURY CASE? |
|---|---|
| A99 Other (specify) - Fast Track | [ ] Yes  [✓] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses   $
2. Total doctor expenses   $
3. Total chiropractic expenses   $
4. Total physical therapy expenses   $
5. Total other expenses (describe)   $
B. Documented lost wages and compensation to date   Subtotal  $
C. Documented property damages to date   $
D. Reasonably anticipated future medical expenses   $
E. Reasonably anticipated lost wages and compensation to date   $
F. Other documented items of damages (describe)   $
   Unsatisfied Judgment
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)   $ 14,789,306. 22

ch. 93A  bad faith settlement practices

Total $  14,789,306. 22

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL   $

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   Date:  12-5-2014

A.O.S.C. 3-2007

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET # SUCV2014-03806-D
Courtroom CtRm 314, 3 Pemberton Square, Boston

RE:  Calandro, Administrator v Sedgwick Claims Management Services, Inc.
TO:

Krzysztof Sobczak, Esquire
Law Office of David J Hoey
352 Park Street, Suite 105
North Reading, MA 01864-

## SCHEDULING ORDER FOR  F  TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue 09/25/2016.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 03/05/2015 | 03/05/2015 | |
| Response to the complaint filed (also see MRCP 12) | | 04/04/2015 | |
| All motions under MRCP 12, 19, and 20 | 04/04/2015 | 05/04/2015 | 06/03/2015 |
| All motions under MRCP 15 | 04/04/2015 | 05/04/2015 | 06/03/2015 |
| All discovery requests and depositions served and non-expert depositions completed | 10/01/2015 | | |
| All motions under MRCP 56 | 10/31/2015 | 11/30/2015 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/29/2016 |
| Case shall be resolved and judgment shall issue by 09/25/2016 | | | 09/25/2016 |

- The final pre-trial deadline is not the scheduled date of the conference.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 12/09/2014

Michael Joseph Donovan
Clerk of the Court

Telephone: 617-788-8110