Exhibit 15



VOL-1

CLAIM NO.: 3400031
INSURED: Radius Management Services
CLAIMANT: Genevieve Calandro
POLICY NO: ZY0004802
DOL: 08/16/2008

SED00001

This POLICY consists of this Common . .cy Declarations Page, the Policy Jacket,      non Policy Conditions, Coverage Parts and any other forms and endorsements issued to be a part of this policy.

**Insurer: PACIFIC INSURANCE COMPANY, LIMITED**
**HARTFORD, CONNECTICUT**
SEND CORRESPONDENCE TO:

FIRST STATE MANAGEMENT GROUP, INC.
150 FEDERAL STREET, BOSTON, MA 02110-1753

**COMMON POLICY DECLARATIONS**

ITT HARTFORD

**Policy No. ZY 0004802**

| Item | **Previous Policy No.** ZY 0004571 |
|---|---|

RADIUS MANAGEMENT SERVICES, INC., ETAL
(SEE FORM XP 04 51 10 05)
1671 WORCESTER ROAD, SUITE 300
FRAMINGHAM, MA 01701

**1. Named Insured and Mailing Address**

**2. Policy Period**

12:01 a.m., standard time at your mailing address shown above.

**From** June 01, 2008   **To** June 01, 2009

**3. Surplus Lines**
**Producer's Name and Address   Code   License No.**

NATHAN SALLOP INSURANCE AGENCY, INC.
25 New Chardon Street
Boston, MA 02114-4774

**4. Audit Period:** Not subject to audit unless otherwise stated-
☐ Annual   ☐ Semi-annual   ☐ Quarterly   ☐ Monthly

**5. Named Insured is:**
☐ Individual   ☒ Partnership   ☐ Joint Venture
☒ Corporation   ☒ Other: Limited Liab. Corp.

**6. Description of your Business** Nursing Home

**7. Insurance Provided**

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy.

The Coverage Parts that are a part of this policy are listed below or on the Extension Schedule attached. The premiums shown may be subject to adjustment.

**8. Summary of Coverage Parts, Insurance Company and Premium:**

| Coverage Part | Co. Code | Insurance Company and Address | Advance Premium |
|---|---|---|---|
| Commercial Property | 8 | Pacific Insurance Company, Ltd. Hartford, Connecticut | $ 69,555 |
| Commercial General Liability | | | $ 266,265 |
| Employee Benefits Liability | | | $ INCLUDED |
| Health Care Facility Professional Liability | | | $ INCLUDED |
| Certified Acts Of Terrorism (TRIA 2002) Coverage | | COVERAGE DECLINED | $ EXCLUDED |
| | | Inspection Fee:      $ Included | |

The Total Premium excluding Automobile is $ ........................................ and is payable $ ........................................ at inception and $ ........................................ at each anniversary.
The Total Premium for Automobile is $ ........................................ and is payable $ ........................................ at inception; but will be recomputed at each anniversary using rates and rules then in effect.
The Total Premium payable at inception is $ 335,820........................................ An ☒ below means the total premium will be recomputed at each anniversary.   ☐ (See Form IL 00 03)   Inspection Fee:      $ Included

**9. Form Numbers of Coverage Parts, Forms and Endorsements that are a part of this policy and that are not listed in the Coverage Parts:** XP 00 78 08 07, C-225 (05/06), C-339 (05/07), GN 25 05 13 (ED. 10/91), IH 99 08 11 85, HP 00 10 02 95, HC 00 10 11 85, HC 00 20 02 86, HC 00 27 11 85, XP 04 29 03 01, AA-21 (4/98), XP 03030401, XP 04511005, FS C 338 03 08, END. #1

Countersigned by _____   Date _____

ISSUE DATE 06/18/08   TC   *Authorized Agent*

Form HS 00 06 03 03  Printed in U.S.A (NS)

SED00005

RE: CALANDRO V. RADIUS
3400031

8/21/13: SPOKE WITH D/C. HE AND BISTANY WENT TO RADIUS DANVERS AND MET WITH "TEMPORARY" ADMINIS-TRATOR STEVE BURKE. STEVE IS GOING TO GO WITH THE SALE OF THE FACILITY AND IS NOT FAMILIAR WITH ANY OF THE PREVIOUS CLAIMS, ISSUES, ETC.

BURKE WILL SIGN INTS AND P/D BUT AS FAR BEING ABLE TO BE DEPOSED — HE KNOWS NOTHING. HE MADE ALL REPORTS AVAILABLE AND NOTHING COULD BE FOUND GOING BACK TO 2008 FOR CALANDRO. ADDI-TIONALLY, D.O.N. SHAW HAS LEFT HER EMPLOY AT RADIUS.

AS FAR AS THE TWO LPN'S ARE CONCERNED, WE DO NOT WANT TO OFFER THEM AS WITNESSES BECAUSE OF THEIR CONFLICTING VERSIONS AND THE LACK OF THE INCIDENT REPORT AND INTERNAL INVESTIGA-TION REPORT.

* SEE D/C'S 8/21/13 REPLY TO P/C ABOUT RESPOND-ING TO DISCOVERY FOR THE VARIOUS RADIUS ENTITIES.

8/26/13: P/C REPLY TO D/C ABOUT RADIUS ENTITIES —

SED00441

RE: CALANDRO V. RADIUS MANAGEMENT
3400031

8/16/13: CONFIRMING EMAIL TO D/C AND BISTANY ABOUT
GETTING INFO FROM THE FACILITY.
APPT: ?

8/16/13: 90 DAY STATUS TO TPA SERVICES.

SED00461

**Blair, Mary**

| | |
|---|---|
| **From:** | Blair, Mary    — $\mathcal{MB}$ |
| **Sent:** | Friday, August 16, 2013 6:19 PM |
| **To:** | 'Thompson, Antanik S (Claim)' |
| **Subject:** | Genevieve Calandro vs. Radius Management Services   (claim no.: 3400031) |
| **Attachments:** | Scan from a Xerox WorkCentre |

# 90-DAY STATUS REPORT

RE:   **Insured:** Radius Management Services, Inc – Radius Healthcare of Danvers
      **Claimant:** Genevieve Calandro
      **Policy No.:** ZY0004802
      **Claim No.:** 3400031
      **Date of Loss:** 8/16/08

**Status:**
Calandro, age 94, was admitted to Radius Danvers, MA on 12/13/07 from an assisted living facility in Detroit MI. It appears she remained at the facility with no unexpected issues until July 2008. At that time she began complaining of not feeling well. On 7/9/08 her physician ordered numerous lab tests and with the consent of Calandro's son, ordered antibiotic treatment, coccyx wound care and nutrition care with the goal of giving her comfort. On 7/11/08 Calandro fell out of her wheelchair in the dining room and struck her head receiving a laceration above her right eye. According to her attorney she was sent to the ER and admitted with diagnoses of posttraumatic intracranial intracerebral contusion, acute appendicitis, dehydration with renal failure and urosepsis. She remained hospitalized until 7/22/08 and was sent to another skilled facility for continuing antibiotic therapy. Her overall conditions continued to decline so that on 8/5/08 Calandro was sent to the hospital where she stayed until 8/12/08 without significant improvement. She was discharged to Hospice care and died on 8/16/08. Her cause of death was listed as Congestive Heart Failure with Acute Renal Failure as an underlying cause. Other conditions contributing to death were acute appendicitis, diabetes T2, and splenic abscess.

Suit was filed the day the Statute of Limitations (3-years in Massachusetts) was to expire. Massachusetts has 90-days service of process and so first notice to us and the insured was from plaintiff's counsel on 10/12/11. The insured had no reason to believe a claim would come out of the fall incident and because the resident did not return to the facility the insured had no idea how severe or minor her injury was as a result of her fall. We immediately filed for a Medical Malpractice Tribunal. In the meantime plaintiff amended the Complaint to add Calandro's attending physician (David Wahl, MD) to the suit. On 5/7/13 the Med-Mal Tribunal issued a decision that there was sufficient evidence to raise a legitimate question as to liability appropriate for judicial intervention as to Radius-Danvers and David Wahl, MD. Plaintiff filed for a status conference which was held on 7/31/13 and a Trial Date of 6/3/14 was assigned. Plaintiff filed a Motion to Extend Discovery and the Court set a date of 2/15/14.

**Action Plan:**

1). One of the issues we have had is locating witnesses at the facility. Since 2008 there has been a turn-over of staff including the administrator. We have been able to locate two former nurse employees who we interviewed in January 2012 and we hope to have them continue to be cooperative. There is also a section of the resident's chart regarding her fall that has not been located. We are going back to the facility to look for it and keep in touch with the witnesses.

1

SED00462

2). The plaintiff had to file an Offe.     Proof for the Tribunal. The attached _    th Certificate and expert report was part of plaintiff's Offer of Proof presentation. This information gives us a sense of where plaintiff is headed and pertains to the insured and co-defendant Dr. Wahl. We will be seeking defense expert witnesses. At this time one of our defense nurse/attorney is reviewing the documents submitted with the Offer of Proof and will give her analysis of the material and direction going forward.

3). We are hoping to get a copy of the hospital medical records, subsequent nursing home records and Hospice records through discovery. We do not have the benefit of any medical information at this point other than the insured's charts and what plaintiff has supplied. Again, a medical expert will review all the records.

4). We need to consider joining forces with the co-defendant. At this point we do not have an understanding of his involvement, but he could prove to be an asset to us by confirming to plaintiff that we followed his orders in the care given to the resident.

**Reserves:**
The initial indemnity reserve of $85K is adequate at this point. In discussions with defense counsel we need additional information through discovery to be able to project an injury and liability value. This will be addressed in another 90-days. The expense reserve is being revised to $75K which includes attorney's fees, litigation costs and expert witness review and fees.

Barring any significant changes or developments, I will report to you again in 90-days.

**NOTE:** This is a FSMG paper file with claim number 3400031. The file # YZJL28636 is from SRS and is the Medicare reporting file.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Thompson, Antanik S (Claim) [mailto:Antanik.Thompson@thehartford.com]
**Sent:** Monday, August 12, 2013 10:14 PM
**To:** Blair, Mary
**Subject:** FW: Genevieve Colandro vs. Radius Management Claim# YZJL28636
**Importance:** High

Mary,

It's almost been a few months and I still don't have an update on this case. I need by the end of the week.

Thanks

**Antanik Thompson, MBA, AIC**
**Consultant**
**TPA Services**
**The Hartford**
**4 South Orange Ave. #320**
**South Orange, NJ 07079**
**Phone: 860-547-9065**
**Fax: 866-522-0725**
**Cell Phone: 908-578-8771**
**Email: antanik.thompson@thehartford.com**

2

SED00463

mpson, Antanik S (Claim)
ay, April 28, 2013 5:41 PM
Mary'
Genevieve Colandro vs. Radius Management Claim# YZJL28636

Mary,

Please provide me with an update on this claim. As a reminder, updated reports are required every 90 days.

Thanks

**Antanik Thompson, MBA, AIC**
**Consultant**
**TPA Services**
**The Hartford**
**4 South Orange Ave. #320**
**South Orange, NJ 07079**
**Phone: 860-547-9065**
**Fax: 866-522-0725**
**Cell Phone: 908-578-8771**
**Email: antanik.thompson@thehartford.com**

**********************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information.  If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
**********************************************************

3

SED00464

**Blair, Mary**

| | |
|---|---|
| **From:** | Blair, Mary — M3 |
| **Sent:** | Friday, August 16, 2013 11:38 AM |
| **To:** | Lawrence Kenney (LKenney@sloanewalsh.com) |
| **Cc:** | bisadjsvc@comcast.net |
| **Subject:** | Estate of Colandro v. Radius - Danvers     (claim no.: 3400031) |

Larry,

I looked at the file again after our phone call yesterday. Bistany's report of 1/13/12 confirms there are 2 nurses (neither one is still employed at Radius Danvers) who he spoke with in person. It's been several years but they are:

1). Mary Cribbs, LPN: 5 Foster St, Gloucester, MA 01930
2). Jeane Whelan-Horne: 14 Birch Rd, Deerfield, NH 03037

Both of the above were interviewed by Phil, did have recollection of Colandro and make a good & sincere appearance. As a matter of fact. Whelan-Horne made out the incident report and says there was an investigation by former D.O.N. Patricia Shaw.

Phil spoke with D.O.N. Patricia Shaw and she could not recall anything about Colandro. She was trying to get the file back from storage and it never arrived by the time she left her employ at Radius.

Paula Piccardi, LPN, Asst D.O.N., Clinical Coordinator was also the skin nurse at the facility. From what we have it appears that the skin wound was first documented on 7/9/08 so it seems that Piccardi should have been on notice. Collandro left the facility 2 days later.

One of the biggest issues is finding the file with the investigation in it about the fall. Phil spoke with the now administrator – Steve Burke – and hopefully he may have located the file.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

1

**Blair, Mary**

| | |
|---|---|
| **From:** | Blair, Mary |
| **Sent:** | Friday, October 14, 2011 1:31 PM |
| **To:** | Karpe, Brian S (Claim) |
| **Cc:** | Mast, Melissa; Keenan, Mary E. (Specialty Casualty UW Support); Conradi, Donald J. (Specialty Casualty UW Support) |
| **Subject:** | Estate of Genevieve Colandro v. Radius Management Services, Inc. (claim no.: FSMG 3400031) |
| **Attachments:** | TPA Consultant.doc; 10-12-11 Hoey demand.pdf |

TO: Brian Karpe

Attached is a memo involving the death of a Massachusetts nursing home resident. The policy is for the period of 6/1/08-6/1/09 which means that this is being handled as a run-off First State Management Group file and therefore it is not supported by a claim system. A copy of the Complaint and demand to settle is attached. When we speak on Monday we can clarify what information needs to be sent to you.

MARY L BLAIR | Functional Consultant
**Sedgwick Claims Management Services, Inc.**
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

1

SED00673



**Sedgwick CMS**

**TO:** Brian Karpe
H.O. TPA Consultant

**FROM:** Mary Blair    — MB

**DATE:** 10/14/11

**RE: Insured:** Radius Management Services, Inc.
**Claimant:** Estate of Genevieve Calandro
**Claim No.:** 3400031

In accordance with the Special Account Instructions for the Health Care Program and due to the death of the resident, this loss is being reported to you as a claim identified in provision (a). (vii) – fatality.

**CASE:** The first notice was received on 10/12/11 from the Law Office of David Hoey who is a well known in Massachusetts for trying to "ring the bell" on nursing home cases and to date has been unsuccessful. Apparently he took this case over at the last minute and filed suit just before the statute would run. Massachusetts has 90-day serve of process and as indicated by plaintiff's counsel will file service if the case is not resolved by 11/12/11. The demand to settle is $500K.

The only information we have at this point is that the 91 year old resident came to Radius and after a short period of care was sent to hospital for numerous conditions including dehydration, Stage IV decubitus, UTI and fecal impaction. It is alleged that while a resident at Radius she fell from her wheelchair sustaining a laceration above her left eye and developing decubitus ulcers that advanced to Stage IV. When released from hospital she was sent to another skilled facility where she died on 8/16/08.

**COVERAGE:** Pacific Insurance Company, Limited issued to Radius Management Services, Inc. a Commercial Liability Policy with Health Care Facility Professional Liability for the period of 6/1/08-6/1/09 under policy number ZY0004802. Limits of liability are $1M each occurrence and $3M general aggregate. There is a $50K indemnity and/or expense deductible. Coverage is triggered under the professional form based on the allegations of breach of the standard of care due causing decubitus ulcer resulting in death. There is no umbrella/excess policy.

**PLAN:** I have defense counsel assigned and in anticipation of litigation and at the direction of counsel an investigator. We will collect as much information as possible from not only the insured, but from plaintiffs counsel (death certificate, autopsy, hospital records, second facility records, expert report) so that we can assess the liability and injuries for possible resolution pre-litigation.



### LAW OFFICES OF DAVID J. HOEY, P.C.

David J. Hoey*
Suzanne CM McDonough*
Nicole R. G. Paquin*
Dale B. Andrews*
Richard T. Bromby *of counsel*
*also admitted in New Hampshire

352 Park Street, Suite 105
North Reading, MA 01864
P: (978) 664-3633
F: (978) 664-3643
www.hoeylaw.com
dhoey@hoeylaw.com

October 12, 2011

Lawrence Kenney, Jr., Esq.
Sloane & Walsh
3 Center Plaza
Boston MA 02108

Re:    **Estate of Genevieve Calandro**
Vs:    **Radius Management Services, Inc., et. al.**
       **Civil Action No.: MICV11-02874D**

Dear Mr. Kenney:

    You may recall the above referenced matter when I inquired as to whether Radius would agree to toll the statute of limitations thereby delaying the filing of a lawsuit in a good faith effort to avoid litigation. Your client refused and therefore I had no choice but to file the lawsuit.

    Enclosed please find a copy of the civil action cover sheet, complaint and tracking order. It is now a matter of public record. As you can see from the tracking order I have until 11/14/2011 to serve the complaint. But, before I am forced to serve the complaint on each Radius defendant I wanted to give you an opportunity to make an offer of settlement or an offer to mediate first. Please note, that this will be the only opportunity before any pre-trial conference that I will make a demand or mediate the case. If you or your client decide to start negotiations and or attend a mediation I will agree to not to serve the complaint for another sixty days assuming the court would agree.

    There is no need for me to resite the facts as they appear in the record since you have either already reviewed the records or will have them reviewed; therefore, I will only provide you with points to focus on.

    This case involves a 91 year old female who was a resident at Radius' Danvers facility (the worst of all the Radius facilities). After a short stay at the Danvers facility Ms. Calandro was admitted to Beverly Hospital dehydrated; a stage IV decubitus; urinary tract infection and fecal impaction. She was diagnosed with acute appendicitis, hyperglycemia, contusion and large decubitus ulceration. The contusion was from a fall from her wheelchair. She was admitted and treated with antibiotics, stabilized and transferred to Cedar Grove for palliative care where she died as a result of Congestive Heart Failure.

SED00705

The bed sore was described as follows: "Coccyx wound draining moderate amount of purulent, foul smelling drainage."

The fall was described as follows: "resident fell out of wheel chair while in dining room. Pt obtained large laceration above left eye. Lyons ambulance called to transport to Beverly Hospital."

$500,000 is our initial demand at this time.

Thank you. I look forward to your response by November 12, 2011.

Very truly yours,

David J. Hoey

DJH/kdf
Enclosures

SED00706

## Blair, Mary

| | |
|---|---|
| **From:** | Cassie Bagent [cbagent@sloanewalsh.com] |
| **Sent:** | Wednesday, August 17, 2011 12:22 PM |
| **To:** | Blair, Mary |
| **Cc:** | Lawrence Kenney |
| **Subject:** | FW: Attached Image |
| **Attachments:** | 2157_001.pdf |

Mary,
We are attached the court docket for the Calandro Matter.

Thanks,

7/9/08 - PRESSURE SORE
7/11/08 - LEFT EYE LACERATION
8/16/08 - DIED

ZY0004802

1

AOTC Information Center                                                                Page 1 of 4

## Commonwealth of Massachusetts
## MIDDLESEX SUPERIOR COURT
## Case Summary
## Civil Docket

## Calandro, Administrator Of The Estate Of Genevieve Calandro v Ra

Details for Docket: MICV2011-02874

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2011-02874 | **Caption:** | Calandro, Administrator Of The Estate Of Genevieve Calandro v Ra |
| **Filing Date:** | 08/16/2011 | **Case Status:** | Needs review for service |
| **Status Date:** | 08/16/2011 | **Session:** | Civil D CtRm 620 (Woburn) |
| **Lead Case:** | NA | **Case Type:** | Most |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 08/05/2013 |
| **Service Date:** | 11/14/2011 | **Disposition:** | 07/31/2014 |
| **Rule 15:** | 11/08/2012 | **Rule 12/19/20:** | 01/13/2012 |
| **Final PTC:** | 02/01/2014 | **Rule 56:** | 10/04/2013 |
| **Answer Date:** | 12/14/2011 | **Jury Trial:** | YES |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2011-02874 | **Caption:** | Calandro, Administrator Of The Estate Of Genevieve Calandro v Ra |
| **Filing Date:** | 08/16/2011 | **Case Status:** | Needs review for service |
| **Status Date:** | 08/16/2011 | **Session:** | Civil D CtRm 620 (Woburn) |
| **Lead Case:** | NA | **Case Type:** | Malpractice-Other |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 08/05/2013 |
| **Service Date:** | 11/14/2011 | **Disposition:** | 07/31/2014 |
| **Rule 15:** | 11/08/2012 | **Rule 12/19/20:** | 01/13/2012 |
| **Final PTC:** | 02/01/2014 | **Rule 56:** | 10/04/2013 |
| **Answer Date:** | 12/14/2011 | **Jury Trial:** | YES |

## Parties Involved

6 Parties Involved in Docket: MICV2011-02874

| | | |
|---|---|---|
| **Party Involved:** | **Role:** | Defendant |

http://www.ma-trialcourts.org/tcic/fc/?app_ctx=print_docket                    8/17/2011

SED00732

AOTC Information Center                                                Page 2 of 4

| | | | |
|---|---|---|---|
| **Last Name:** | Radius BD, Inc. | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Radius Danvers Operating, LLC | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Radius Management Services, II, Inc. | **First Name:** | |
| **Address:** | 591 North Avenue No. 3 | **Address:** | |
| **City:** | Wakefield | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Radius Management Services, Inc. | **First Name:** | |
| **Address:** | 591 North Avenue No # | **Address:** | |
| **City:** | Wakefield | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Roush & Associates, Inc. | **First Name:** | |
| **Address:** | 591 North Avenue | **Address:** | No 3 |
| **City:** | Wakefield | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| | Calandro, Administrator Of The | | |

SED00733

AUTC Information Center                                                    Page 3 of 4

| | | | |
|---|---|---|---|
| **Last Name:** | Estate Of Genevieve Calandro | **First Name:** | Garry |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

2 Attorneys Involved for Docket: MICV2011-02874

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|
| **Last Name:** | Hoey | **First Name:** | David J |
| **Address:** | Law Offices of David J Hoey | **Address:** | 352 Park Street, Suite 105 |
| **City:** | N Reading | **State:** | MA |
| **Zip Code:** | 01864 | **Zip Ext:** | |
| **Telephone:** | 978-664-3633 | **Tel Ext:** | |
| **Fascimile:** | 978-664-3643 | **Representing:** | Calandro, Administrator Of The Estate Of Genevieve Calandro, Garry (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|
| **Last Name:** | Hamill | **First Name:** | Bernard J |
| **Address:** | 36 Miller Stile Road | **Address:** | |
| **City:** | Quincy | **State:** | MA |
| **Zip Code:** | 02169 | **Zip Ext:** | |
| **Telephone:** | 617-773-6554 | **Tel Ext:** | |
| **Fascimile:** | 617-328-5547 | **Representing:** | Calandro, Administrator Of The Estate Of Genevieve Calandro, Garry (Plaintiff) |

## Calendar Events

No Calendar Events found for Docket: MICV2011-02874.

There are currently no calendar events associated with this case.

## Full Docket Entries

2 Docket Entries for Docket: MICV2011-02874

SED00734

| Entry Date: | Paper No: | Docket Entry: |
| --- | --- | --- |
| 08/16/2011 | 1 | Complaint & civil action cover sheet filed |
| 08/16/2011 | | Origin 1, Type B07, Track A. |

SED00735

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## Calandro, Administrator Of The Estate Of Genevieve Calandro v Ra

Details for Docket: MICV2011-02874

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2011-02874 | **Caption:** | Calandro, Administrator Of The Estate Of Genevieve Calandro v Ra |
| **Filing Date:** | 08/16/2011 | **Case Status:** | Needs review for service |
| **Status Date:** | 08/16/2011 | **Session:** | Civil D CtRm 620 (Woburn) |
| **Lead Case:** | NA | **Case Type:** | Most |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 08/05/2013 |
| **Service Date:** | 11/14/2011 | **Disposition:** | 07/31/2014 |
| **Rule 15:** | 11/08/2012 | **Rule 12/19/20:** | 01/13/2012 |
| **Final PTC:** | 02/01/2014 | **Rule 56:** | 10/04/2013 |
| **Answer Date:** | 12/14/2011 | **Jury Trial:** | YES |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2011-02874 | **Caption:** | Calandro, Administrator Of The Estate Of Genevieve Calandro v Ra |
| **Filing Date:** | 08/16/2011 | **Case Status:** | Needs review for service |
| **Status Date:** | 08/16/2011 | **Session:** | Civil D CtRm 620 (Woburn) |
| **Lead Case:** | NA | **Case Type:** | Malpractice-Other |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 08/05/2013 |
| **Service Date:** | 11/14/2011 | **Disposition:** | 07/31/2014 |
| **Rule 15:** | 11/08/2012 | **Rule 12/19/20:** | 01/13/2012 |
| **Final PTC:** | 02/01/2014 | **Rule 56:** | 10/04/2013 |
| **Answer Date:** | 12/14/2011 | **Jury Trial:** | YES |

## Parties Involved

6 Parties Involved in Docket: MICV2011-02874

| | | |
|---|---|---|
| **Party Involved:** | **Role:** | Defendant |

SED00736

| | | | |
|---|---|---|---|
| **Last Name:** | Radius BD, Inc. | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Radius Danvers Operating, LLC | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Radius Management Services, II, Inc. | **First Name:** | |
| **Address:** | 591 North Avenue No. 3 | **Address:** | |
| **City:** | Wakefield | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Radius Management Services, Inc. | **First Name:** | |
| **Address:** | 591 North Avenue No # | **Address:** | |
| **City:** | Wakefield | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Roush & Associates, Inc. | **First Name:** | |
| **Address:** | 591 North Avenue | **Address:** | No 3 |
| **City:** | Wakefield | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |
| **Party Involved:** | | **Role:** | Plaintiff |
| | Calandro, Administrator Of The | | |

SED00737

| | | | | |
|---|---|---|---|---|
| **Last Name:** | Estate Of Genevieve Calandro | | **First Name:** | Garry |
| **Address:** | | | **Address:** | |
| **City:** | | | **State:** | |
| **Zip Code:** | | | **Zip Ext:** | |
| **Telephone:** | | | | |

## Attorneys Involved

2 Attorneys Involved for Docket: MICV2011-02874

| **Attorney Involved:** | | | **Firm Name:** | |
|---|---|---|---|---|
| **Last Name:** | Hoey | | **First Name:** | David J |
| **Address:** | Law Offices of David J Hoey | | **Address:** | 352 Park Street, Suite 105 |
| **City:** | N Reading | | **State:** | MA |
| **Zip Code:** | 01864 | | **Zip Ext:** | |
| **Telephone:** | 978-664-3633 | | **Tel Ext:** | |
| **Fascimile:** | 978-664-3643 | | **Representing:** | Calandro, Administrator Of The Estate Of Genevieve Calandro, Garry (Plaintiff) |

| **Attorney Involved:** | | | **Firm Name:** | |
|---|---|---|---|---|
| **Last Name:** | Hamill | | **First Name:** | Bernard J |
| **Address:** | 36 Miller Stile Road | | **Address:** | |
| **City:** | Quincy | | **State:** | MA |
| **Zip Code:** | 02169 | | **Zip Ext:** | |
| **Telephone:** | 617-773-6554 | | **Tel Ext:** | |
| **Fascimile:** | 617-328-5547 | | **Representing:** | Calandro, Administrator Of The Estate Of Genevieve Calandro, Garry (Plaintiff) |

## Calendar Events

No Calendar Events found for Docket: MICV2011-02874.

There are currently no calendar events associated with this case.

## Full Docket Entries

2 Docket Entries for Docket: MICV2011-02874

http://www.ma-trialcourts.org/tcic/fc/?app_ctx=print_docket                 8/17/2011

SED00738

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 08/16/2011 | 1 | Complaint & civil action cover sheet filed |
| 08/16/2011 | | Origin 1, Type B07, Track A. |

SED00739

# SLOANE AND WALSH

A PROFESSIONAL LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW

WILLIAM J. DAILEY, JR.
JOHN P. RYAN * (RI, NH)
ROBERT H. GAYNOR
EDWARD T. HINCHEY
LAWRENCE J. KENNEY, JR.
ANTHONY J. ANTONELLIS * (NH, CT)
WILLIAM J. DAILEY III
JOHN A. DONOVAN III * (RI, NH, DC, CT)
MYLES W. MCDONOUGH
BRIAN H. SULLIVAN
LAURA MEYER GREGORY
MICHAEL P. GUAGENTY
MICHAEL J. KERRIGAN
ROSS A. KIMBALL
JOHN MCCORMACK
TANYA K. OLDENHOFF

THREE CENTER PLAZA
BOSTON, MASSACHUSETTS 02108
TELEPHONE: (617) 523-6010
FAX: (617) 227-0927
FAX: (617) 523-2181
**PLEASE FORWARD ALL MAIL TO BOSTON ADDRESS**

RHODE ISLAND OFFICE :
127 DORRANCE STREET
PROVIDENCE, RI 02903
TELEPHONE: (401) 490-9987

CONNECTICUT OFFICE:
100 PEARL STREET, 14th fl.
HARTFORD, CT 06103
TELEPHONE: (860) 249-7058

NEW HAMPSHIRE OFFICE:
1 TARA BOULEVARD, SUITE 200
NASHUA, NH 03062
TELEPHONE: (603) 324-7134

LISA A. BOMBARDIERI
MATTHEW P. CARDOSI * (RI)
PETER H. CARROLL * (RI)
TIERNEY M. CHADWICK * (NH)
REBECCA A. COBBS
DANIEL R. CONTE
BRETT R. CORSON * (NH, DC, NY)
DAVID M. HARTIGAN
BRIAN W. HAYNES
LYDIA C. KNIGHT
RYAN B. MACDONALD
JASON M. MORALES * (NY)
HARRY A. PIERCE
MICHAEL P. REGAN
CHARLES F. ROURKE, II
MATTHEW D. RUSH
GAIL M. RYAN * (RI)
TIMOTHY B. SWEETLAND

WWW.SLOANEWALSH.COM
WRITER'S DIRECT E-MAIL ADDRESS: LKENNEY@SLOANEWALSH.COM

*Also admitted

April 17, 2014

*VIA EMAIL*

David J. Hoey, Esq.
Krzysztof G. Sobczak, Esq.
LAW OFFICE OF
  DAVID J. HOEY, P.C.
352 Park Street, Suite 105
North Reading, MA  01864

Re:    Estate of Genevieve Calandro v. Radius Management Services, Inc. et al.
       Middlesex Superior Court Civil Action No.:  MICV2011-02874-D
       Our File No.:  FS400-4948

Dear Mr. Sobczak:

    As you have been told on several occasions, I have been continuously on trial since March 24, 2014 in the Middlesex Superior Court.  That trial went to verdict yesterday afternoon at 3:30 p.m.  I was in court again this morning on that same case with regard to certain issues raised by the jury's verdict.

    I have your deposition notices for tomorrow, April 18, 2014.  For reasons that are not at all clear to me, you have decided to notice the depositions of 28 business entities and individuals – the vast majority of which have nothing to do with the location of the incident involving Genevieve Calandro.  As you also have been told, as has Mr. Hoey, Radius Danvers Operating, LLC, the licensee of the facility involved, is no longer an operating entity, although it technically still exists on the records of the Secretary of State's Corporation Division.  Similarly, Radius Management Services II, Inc., exists as an active entity in the corporations records of the

SED00943

David J. Hoey, Esq.
Krzysztof Sobczak, Esq.
April 17, 2014
Page 2

Division of the Secretary of State's Office, but there is presently no one who has any information with regard to the operation of the Radius Danvers facility back in 2008.

Likewise, Roush & Associates, Inc., is a dissolved corporation. Radius Management Services, Inc., is also a dissolved corporation, and Radius BD, Inc., is simply the manager of the Radius Danvers Operating LLC, and is also not an active business entity. Accordingly, none of these business entities has any employees or information to provide with regard to the events which are at issue in this particular case, other than the nursing chart for that facility involving Ms. Calandro, which is currently in your possession.

I have no idea why it is that you feel it is appropriate or necessary to depose multiple numbers of people who have, to your knowledge, nothing to do with this incident.

Moreover, other than Christine Bassett, who is a corporate officer at one of the entities and David Roush who is the corporate officer of another of the entities there are no current employees of any of the defendants in this case. Accordingly, I presume that you understand that we have no control over any of these individuals and that we do not anticipate without appropriate service of process that they will be appearing in response to your notice of deposition. If you choose to serve process on these individuals to appear at deposition without a reasonable basis to do so after having been advised that have they have no relationship with this incident, it appears clear that you have no good ground to do so and simply seeking to harass and annoy.

Finally, I have told Mr. Hoey, and he is well aware, that because of the corporations are no longer in active existence, we are unable to comply with discovery requests that have previously been served. Accordingly, we intend to stipulate to fault on behalf of these corporations and to try this case solely on the issue of causation and damages. With that in mind, I cannot understand what the purpose of your deposition notices is intended to be. It appears to be simply a matter of seeking to harass the defendants in some way for which reason I do not understand.

I am enclosing a copy of my previous letter to David Hoey, dated August 21, 2013, outlining the problems we had in responding to discovery requests that he had made back then. You must be aware of this information, and I would ask you to reconsider these deposition notices as being unnecessary, vexatious and being pressed solely for some ulterior purpose.

Accordingly, this letter will inform you that I do not intend to produce anybody corporate representatives for the depositions tomorrow since, given our intention to concede fault for the purposes of this case such depositions serve no purpose.

David J. Hoey, Esq.
Krzysztof Sobczak, Esq.
April 17, 2014
Page 3


   Given this notice, I would suggest quite respectfully that you not schedule any stenographer for the depositions tomorrow for what is clearly a patently useless exercise.

         Very truly yours,



         Lawrence J. Kenney, Jr.

LJK
Enclosure
ecc: Robert L. Bouley, Esq.
   Ms. Mary L. Blair


850480.1



*April 10, 2014*
*FS-400-494*

**HOEYLAW**

LAW OFFICES OF DAVID J. HOEY, P.C.

David J. Hoey*
Dale B. Andrews*
Richard T. Bromby *of counsel*
Krzysztof G. Sobczak *of counsel***
  *also admitted in New Hampshire*
  **also admitted in Illinois*

352 Park Street, Suite 105
North Reading, MA 01864
P: (978) 664-3633
F: (978) 664-3643
www.hoeylaw.com
dhoey@hoeylaw.com

April 8, 2014

**PRIVATE / CONFIDENTIAL**

Lawrence J. Kenney, Jr., Esq.
*Sloane & Walsh*
Three Center Plaza
Boston, MA 02108

**RE:**     **Estate of Genevieve Calandro**
**VS:**     **Radius Management Services II, Inc., et al**
                  **Civil Docket No: MICV2011-02874-D**

Dear Attorney Kenney:

      This private, confidential letter is to express my disappointment and frustration with the settlement process in this matter.  On November 13th of last year, during a break in Dr. Wahl's deposition, I made a <u>one-time</u> <u>discounted</u> oral demand on you and Mr. Bouley in the amount of $500,000.00.  That was fair and reasonable at the time based on the status of the case and given the problems that both your clients (lack of cooperation from Radius) and Mr. Bouley's (an unstable Dr. Wahl) were having.  My recommendation was for each defendant to contribute $250,000.00 which was not a lot money for Hartford to pay.  Instead, almost 90 days later, on February 6, 2014 I receive a joint offer of $275,000.00. I gave you an opportunity to settle this matter at a huge discount, way below what the potential jury verdict may come back at.  As you have stated to me, but denied before the Court, you would have no choice but to admit to liability.

      My disappointment and frustration also stems from there being no offer made in the *Thomas* case. As you know Joseph Pacheco is the same adjuster that we are dealing with on this matter.  This incredibly low joint offer of $275,000.00 was insulting to me and, in my opinion, showed disrespect to what was a one-time take it or leave it discounted demand. This, along with the no offer in the *Thomas* matter, leads me to believe that the adjustors here may not have all the information (or have not fully investigated these claims and the possible outcomes) and their offers may amount to unfair settlement practices (in violation of chapters 176D and 93A). This is not something I wish to pursue since I value my relationship with  you and Mary, but I will certainly pursue it against Joe Pacheco, which will then leave me no choice but to include Sedgwick (The Hartford).

SED00951

Prior to the last Rule 16 Conference (which took the place of the Final Pre-Trial Conference), I relayed to Mr. Bouley, in an email a new demand amount of $1,000,000.00. This demand was sent to his client only, and was a demand for his client's applicable insurance policy limit. Therefore, I must make the same $1,000,000.00 demand on your clients. I don't care who pays, you, him or both. I am still open to resolving this matter without going to trial (or need for further motions practice[1]), please note that the earlier, one-time take it or leave it demand is no longer in effect and is the floor for any subsequent offers from either of the Defendants.

If you and your clients truly would like to resolve this matter outside of trial, as chapter 176D requires, then I await a new, serious, and at the appropriate level (in excess of $500,000.00) offer by April 18, 2014.

Thank you.

Very truly yours,

DAVID J. HOEY

PS- This letter is sent to you only and is not to be shared with Mr. Bouley.

---

[1] See the depositions that were noticed yesterday, April 7, 2014 and the Rule 9C discovery letter my associate will be sending to you later today.

SED00952

**Blair, Mary**

| | |
|---|---|
| **From:** | Cassie Bagent <cbagent@sloanewalsh.com> |
| **Sent:** | Friday, February 07, 2014 5:16 PM |
| **To:** | Blair, Mary |
| **Cc:** | Lawrence Kenney |
| **Subject:** | Calandro PROPOSED Pre-Trial Report and Budget |
| **Attachments:** | Proposed Pre-Trial Report & Budget (2-7-14).PDF |

Hi Mary,
We are attaching a "proposed" pre-trial report and budget with regard to the Calandro matter.
When you have a chance to review this, please contact Larry.
Thank you.

Cassie Bagent
  Assistant to
  *William J. Dailey, III, Esq.*
  *Lawrence J. Kenney, Jr., Esq.*
SLOANE & WALSH, LLP
Three Center Plaza
Boston, Massachusetts  02108
Voice: (617) 523-6010 x 358
Fax:  (617) 227-0927
Email: cbagent@sloanewalsh.com

_____

**Confidentiality Notice:**  *Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521.  If you received this message erroneously, please delete this message and any attachments.  Please do not save, copy, forward or use misdirected e-mail.  Anyone misusing this e-mail will be prosecuted.  Thank you.*

SED00997

# SLOANE AND WALSH

### A PROFESSIONAL LIMITED LIABILITY PARTNERSHIP
### ATTORNEYS AT LAW

WILLIAM J. DAILEY, JR.
JOHN P. RYAN * (RI, NH)
ROBERT H. GAYNOR
EDWARD T. HINCHEY
LAWRENCE J. KENNEY, JR.
ANTHONY J. ANTONELLIS * (NH, CT)
WILLIAM J. DAILEY III
JOHN A. DONOVAN III * (RI, NH, DC, CT)
MYLES W. MCDONOUGH
BRIAN H. SULLIVAN
LAURA MEYER GREGORY
MICHAEL P. GUAGENTY
MICHAEL J. KERRIGAN
ROSS A. KIMBALL
JOHN MCCORMACK
TANYA K. OLDENHOFF

**THREE CENTER PLAZA**
**BOSTON, MASSACHUSETTS 02108**
**TELEPHONE: (617) 523-6010**
**FAX: (617) 227-0927**
**FAX: (617) 523-2181**
**PLEASE FORWARD ALL MAIL TO BOSTON ADDRESS**

RHODE ISLAND OFFICE:
127 DORRANCE STREET
PROVIDENCE, RI 02903
TELEPHONE: (401) 490-9987

CONNECTICUT OFFICE:
100 PEARL STREET, 14th Floor
HARTFORD, CT 06103
TELEPHONE: (860) 249-7058

NEW HAMPSHIRE OFFICE:
1 TARA BOULEVARD, SUITE 200
NASHUA, NH 03062
TELEPHONE: (603) 324-7134

WWW.SLOANEWALSH.COM
WRITER'S DIRECT E-MAIL ADDRESS: LKENNEY@SLOANEWALSH.COM

LISA A. BOMBARDIERI
MATTHEW P. CARDOSI * (RI)
PETER H. CARROLL * (RI)
TIERNEY M. CHADWICK * (NH)
REBECCA A. COBBS
DANIEL J. CONTE
BRETT R. CORSON * (NY, DC, NH)
DAVID M. HARTIGAN
BRIAN W. HAYNES
LYDIA C. KNIGHT
RYAN B. MACDONALD
JASON M. MORALES * (NY)
ROBERT T. NORTON * (RI, NH)
HARRY A. PIERCE
MICHAEL P. REGAN
CHRISTOPHER M. REILLY * (RI)
CHARLES F. ROURKE II
TYSON C. ROY * (RI)
MATTHEW D. RUSH
GAIL M. RYAN * (RI)
TIMOTHY B. SWEETLAND
*Also admitted

February 7, 2014

Via e-mail:  Mary.Blair@sedgwickcms.com

Ms. Mary L. Blair
PL Claims Manager
SEDGWICK
40 Court Street, Suite 500
Boston, MA  02108

<u>**PRE-TRIAL REPORT AND TRIAL BUDGET**</u>
**TRIAL:  Tuesday, June 3, 2014**

RE:   Claimant:      Estate of Genevieve Calandro, et al.
        Insured:        Radius Management Service, et al.
        SRS Claim No.:
        DOD:             August 16, 2008
        Our File No.:   FS-400-4948

Dear Ms. Blair:

I am writing to bring you up to date as to the status of the above referenced matter and to provide you with our Pre-Trial Report and Trial Budget for this case.

As you know, this matter is scheduled to start trial on Tuesday, June 3, 2014. It is expected that the case will be reached on or very shortly after that date.  It is scheduled as the 2nd case out in the session but I understand the first case is very likely to settle.

833399.2

SED00998

Ms. Mary L. Blair
Pre-Trial Report and Budget
February 7, 2014
Page 2

## PRE-TRIAL REPORT

1. Trial

The case is scheduled for trial on Tuesday, June 3, 2014 in the Middlesex Superior Court, Middlesex, Massachusetts.  Given the age of the case (almost 3 years) I expect it will be reached at that time.  It is expected that the case will take approximately four to five trial days.

 a. Hartford Coverage and Settlement Potential

Settlement potential is excellent.  Plaintiff has tendered a joint $500,000 demand to both the involved insurers.  Pacific Insurance has a $1 million/$3 million policy collectively for its Radius related insured's.  Coverys insures the co-defendant David Wahl, M.D. with a $1 million combined single limit policy.

Plaintiff has made a demand of $500,000 to settle against both defendants. Coverys has indicated a willingness to contribute on a 50-50 basis to a settlement package of up to $400,000.  A settlement at that level is advantageous the all the defendants but for different reasons.  There has been a joint offer of $225,000 which has been rejected.

 b. The Parties

*Plaintiff*:  Garry Calandro, Administrator of the Estate of Genevieve Calandro

*Pacific Insured Defendants*:  Radius Management Services, Inc., Radius Management Services, II, Inc., Roush & Associates, Inc., Radius Danvers Operating, LLC and Radius BD, Inc.

*Co-Defendant*:  David Wahl, M.D.

2. Venue and Trial Counsel

The case will be tried in Middlesex County Superior Court, Woburn, Massachusetts , generally recognized as one of the more defendant friendly counties in Massachusetts.  We can expect that the jury venire will be primarily middle class, Caucasian suburbanites, with fifty per cent or more female.

The trial judge that will be assigned to this session in June is uncertain as no assignment for the June session has yet been made and there are a number of newly appointed judges assigned to this Court.

833399.2

SED00999

Ms. Mary L. Blair
Pre-Trial Report and Budget
February 7, 2014
Page 3

We expect that Attorney David J. Hoey will try the case for the plaintiffs along with his co-counsel Bernard Hamill.

The co-defendant is David Wahl, M.D. and he is represented by Attorney Robert L. Bouley of McCarthy Bouley & Barry, P.C. Mr. Bouley has extensive trial experience.

I will try the case for your insured's.

3.    <u>Theories of Liability Against the Radius Insureds</u>

This is a wrongful death action. The plaintiff alleges that certain unnamed nurses at Radius Danvers were negligent and so caused or contributed to cause, along with the co-defendant Dr. Wahl, the attending physician, the death of plaintiff's decedent.

As you are aware, all the former Radius operating facilities, of which there were at one time a dozen or more, have been sold and are now dissolved corporate entities. By statute, however, they continue to exist for the purposes of this suit and may be sued and have a judgment entered against them.

The named defendant Radius Management Services, Inc., which after 2006 had no role in the operation of the Danvers facility at all, is no longer a going concern and ceased all business operations last year after the sale of all other Radius facilities.

The named defendant, Roush & Associates, Inc., never had a role in the operation of the Danvers facility at all (it was a separate consulting business unaffiliated with facility management), is also no longer a going concern and ceased all business operations last year after the sale of all other Radius facilities.

Radius Management Services, II, Inc. was in 2008, but no longer is, the employer of the facility Administrator.    Radius Danvers Operating LLC was the operating entity and the license holder with the DPH. Radius BD, Inc. was the manager of Radius Danvers Operating LLC. Roush & Associates, Inc. no longer exists. In short all the former officers and key employees of the Radius management group have gone to work elsewhere or now work for Athena which bought the former Radius facilities.

To further complicate things none of the significant people who were employed at the facility in 2008 are still there, or have been there for some time, long before any discovery was served in this case, including the Administrator, who has changed several times as has the Director of Nursing. So getting anybody who knows anything about the care provided to the decedent has been and continues to be a problem.

833399.2

SED01000

Ms. Mary L. Blair
Pre-Trial Report and Budget
February 7, 2014
Page 4

4.    Underlying Factual Context

Genevieve Calandro died on August 16, 2008 at age 91. She was observed on July 11, 2008 to have fallen out of her wheelchair sustaining a laceration above her eye. She had been a resident at your insured since December 2007. She was transferred to the Beverly Hospital after that fall. She died on August 16, 2008 after having been transferred to a different Nursing Home.

It is alleged by plaintiff's expert that the staff at Radius Danvers failed in a number or respects to comply with the accepted standards of care with regard to the care provided for her symptoms of infection, dehydration, worsening pressure ulcer, elevated levels of blood glucose and failure to timely notify the attending physician of changes in her condition all of which contributed to her death on August 16, 2008. She is alleged to have died from congestive heart failure which was secondary to renal failure.

5.    Defenses and Potential Liability

Defending this case on liability will be very difficult. We have been served with multiple discovery requests directed to all defendants for records and testimony involving staffing, training, financial reports, incident reports, employment records, policy and procedure manuals, budgets and the like which are onerous requests to respond to even in the normal course, but not necessarily improper. In the normal course such requests are very difficult and time consuming to deal with but here are nearly impossible to comply with where, in this case, all of the entities involved are now dissolved and, but for this suit, do not legally exist. Further we are advised that such records are likely in bulk storage with those of other facilities and will be very difficult to try to separate and retrieve them at this point. In addition, all of the former employees have long gone to other facilities and tracking them down has been difficult.

It appears that our only defense at this point, if allowed, will be a reference to the chart by an expert who can opine as to compliance with the standard of care. How effective that might be without live testimony from the people involved with her care is questionable. However, it is likely that the plaintiff attorney will move to default us on liability for failure to produce these requested documents. Before he does that we will likely have no choice but to admit liability and try the case solely on the issue of damages.

6.    Damages

Usual wrongful death damages. Decedent left three adult children. There is nothing particularly compelling or unusual about the loss of their admittedly frail 91 year mother that would take this case of the norm on the usual measure of damages.

SED01001

Ms. Mary L. Blair
Pre-Trial Report and Budget
February 7, 2014
Page 5

7.   Policy Limits

$1 million.

8.   Verdict Value

Assuming full liability we would think that an award of $300,000 to $500,000 is possible.  There is also evidence sufficient to submit the question of conscious pain and suffering to the jury.  Interest bears at approximately 35%.  Because of joint and several liability both defendants will share liability on a pro-rata basis without regard to any percentage of negligence.

Because of the discovery issues, it is very likely if not assured that there will be an award against our insured at least and probably against both your insured's and the defendant physician.

There is no basis for comparative negligence or for indemnity.

9.   Further Handling

Discovery will close within the next month although it is likely that additional discovery may be scheduled.  The deposition of the defendant physician has not been completed and may be rescheduled if the case cannot be resolved.

We really have no one with sufficient knowledge to testify as a 30(b)(6) designated representative of the facility since much of the information that will be requested and inquired about is simply presently unknown.  It is therefore very likely that we will be left with little alternative but to admit liability and accept a jury verdict on damages.

**TRIAL BUDGET**

I would expect that trial itself to take four to five trial days including jury selection, openings, evidence, closings and jury deliberations.  I would expect that the total time expended for the trial itself would be approximately 12 to 16 hours.  The pre-trial preparation, including expert witness preparation (if allowed), meeting with associates and preparing for the trial, preparation of multiple pre-trial pleadings and jury instructions would take approximately three days or another 8 to 10 hours.

In addition, I would anticipate that our expert's fees, assuming that such testimony is permitted, would be approximately $2,000 to $2,500.  Accordingly, we would expect that the cost in trying the case to a conclusion would be approximately $4,000 to $6,000 and fees and expenses would be approximately $2,000 to $2,500.

833399.2

SED01002

Ms. Mary L. Blair
Pre-Trial Report and Budget
February 7, 2014
Page 6

     I will keep you advised as to developments.   As always, if you have any questions or concerns please do not hesitate to contact me and I will be glad to speak with you in more detail.

                       Very truly yours,

                       Lawrence J. Kenney, Jr.

LJK:cb

833399.2

**Blair, Mary**

| | |
|---|---|
| **From:** | Blair, Mary |
| **Sent:** | Thursday, January 30, 2014 12:31 PM — $\mathcal{MB}$ |
| **To:** | Lawrence Kenney |
| **Subject:** | RE: Estate of Genevieve Calandro v. Wahl/Radius Hospital, #73195 |

I need something from you to send to Hartford for authority. Hopefully Joe will not move up too quickly because I only have $125K right now.

Can you do a "trial analysis" type of report and I will send it right away?

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Lawrence Kenney [mailto:LKenney@sloanewalsh.com]
**Sent:** Thursday, January 30, 2014 12:24 PM
**To:** 'Joseph Pacheco'
**Cc:** Robert Bouley; Matthew Rydzewski; Blair, Mary; Cassie Bagent
**Subject:** RE: Estate of Genevieve Calandro v. Wahl/Radius Hospital, #73195

Joe,

Sorry to be so long getting back to you but the adjuster on my end had two deaths in her family and is still out of the office but I did have a chance to speak with her . As Bob Bouley and I discussed she is willing to go 50/50 with Coverys on this. She would be willing to contribute up to $200K if necessary but would prefer to start at something lower and see what Hoey's response is. She is satisfied at whatever joint initial offer you would prefer to make.

Larry

**From:** Joseph Pacheco [mailto:jpacheco@coverys.com]
**Sent:** Tuesday, January 14, 2014 12:08 PM
**To:** Lawrence Kenney
**Cc:** Robert Bouley; Matthew Rydzewski
**Subject:** Estate of Genevieve Calandro v. Wahl/Radius Hospital, #73195

Hi Larry,

I wanted to follow up on an email I sent you on 12/17/13 regarding joint settlement of this case. David Hoey has been inquiring and sent me an email yesterday wanting to know where we stand. I told him I was waiting to hear back from you on Radius Hospital's position. Could you kindly advise me ASAP?

Thanks,

Joe Pacheco
Senior Claim Representative

SED01015

**Blair, Mary**

| | |
|---|---|
| **From:** | Shingleton, Becky A (Specialty Commercial + QA) |
| | <Becky.Shingleton@thehartford.com> |
| **Sent:** | Tuesday, July 08, 2014 6:28 PM |
| **To:** | Blair, Mary |
| **Cc:** | Shingleton, Becky A (Specialty Commercial + QA) |
| **Subject:** | RE: Estate of Calandro v. Radius Management Services |

Wow...unfortunately, I have nothing more profound to say.  You are authorized to proceed as recommended.

Please keep me closely advised.

Thanks,

**Becky A. Shingleton, SCLA**
TPA Services Consultant

The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax:  (860) 392 - 1846
Email:  Becky.Shingleton@thehartford.com

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Monday, July 07, 2014 9:29 AM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

# JULY 17, 2014 TRIAL - RESERVE/SETTLEMENT AUTHORITY

**RE: :   Insured:** Radius Management Services, Inc – Radius Healthcare of Danvers
      **Claimant:** Genevieve Calandro
      **Policy No.:** ZY0004802
      **Claim No.:** 3400031
      **Date of Loss:** 8/16/08

**CASE SYNOPSIS:** Calandro, age 94, was admitted to Radius Danvers, MA on 12/13/07 from an assisted living facility in Detroit MI. It appears she remained at the facility with no unexpected issues until July 2008. At that time she began complaining of not feeling well. On 7/9/08 her physician ordered numerous lab tests and with the consent of Calandro's son, ordered antibiotic treatment, coccyx wound care and nutrition care with the goal of giving her comfort. On 7/11/08 Calandro fell out of her wheelchair in the dining room and struck her head receiving a laceration above her right eye. She was sent to the ER and admitted with diagnoses of posttraumatic intracranial intracerebral contusion, acute appendicitis, dehydration with renal failure and urosepsis. She remained hospitalized until 7/22/08 and was sent to another skilled facility for continuing antibiotic therapy. Her overall conditions continued to decline so that on 8/5/08 Calandro was sent to the hospital where she stayed until 8/12/08 without significant improvement. She was discharged to Hospice care and died on 8/16/08. Her cause of death was listed as Congestive Heart Failure with Acute Renal Failure as an

1

SED01162

underlying cause. Other conditions contributing to death were acute appendicitis, diabetes T2, and splenic abscess.

**STATUS:** Last week defense counsel was advised of a Trial date for this case. They went forward with doing a Pre-Trial Report (attached #1) and I am supplementing their report to fill in other information for your benefit. This is a First State Management Group file that is completely manual and paper and was previously reported to TPA Services. Let me know if you cannot locate the file and I will get more information to you.

1. Plaintiff's counsel did no discovery on the case until April 2014. At that time they realized we had nobody to testify for the Radius entities because they had been dissolved and no longer legally existed. Even though we advised plaintiff's counsel of this, on April 7th (attached #2) they served us with notice to take 28 depositions in one day every 15 minutes. Obviously we were unable to comply with the request. This was followed up by plaintiff's 2-day suspended deposition of co-defendant Dr. David Wahl (treating physician and Medical Director). As you will see from the April 28th (attached #3) depo summary, co-defendant suffers from depression and let his medical license lapse. He is certainly not going to be a credible witness. In April plaintiff (the son of Calandro) testified sincerely and we believe a jury will find him likeable and a sympathetic witness.

2. Plaintiff served his expert disclosures on April 27th (attached #4) which we were waiting to obtain. With this information and the records we had Dr. Terrence O'Malley as our expert we were able to present the reports to our expert for a defense opinion (attached #5). He concluded that the plaintiff's death was as a result of a significant decline of her physical condition due to her pre-existing co-morbidities, advanced age and dementia. Both plaintiff's expert and defense experts agree that the decline began after Colandro left Radius and was at Cedar Glen facility.

3. Based on our inability to produce anybody to testify and the strength of our medical review for the causation issues, we filed the attached (#6) Stipulation. We are conceding to liability for a breach of the standard of care and will try the case on the injury and causation issues.

4. Plaintiff initially was looking at a global demand of $500K, but because of issues with co-defendant's carrier they increased the demand to $1M each. Defense counsel and I are very well known to plaintiff's counsel and have always had a good working relationship with them as they try to take over the plaintiff's nursing home litigation. PC is a professor for the Reptile strategy. We have tried to get him to settle out separately with us and he has yet to respond. Meanwhile, I was able to get co-defendant's carrier to contribute $250K to a global settlement of $500K in the event that plaintiff decides not to try the case.

5. Defendants have requested and received a Court Conference (in 2-days) on July 9th to determine if plaintiff will settle out or if they are going to try the case. The Trial is supposed to starts on a Thursday (odd day) and we are not certain whether it will be reached that day.

**RECOMMENDATIONS:** We will be attending the conference on the 9th with an attempt to see if we can settle out separately rather than to try the case. Co-defendant does not want to contribute any additional money until it is determined whether or not plaintiff will settle globally and for what amount. They have also filed a Stipulation to try the case on damages. It is our opinion that they are the target of the plaintiff. We do not believe that a jury will award more than $500K + $200K interest for a total of $700K worst case scenario. This would leave us at 50% or $350K. Our recommendation is to attend the Court Conference to attempt to settle out separately on the best figure up to $300K. Plaintiff's counsel may give us no choice by to try the case based on the amount they are demanding. This has happened with plaintiff's counsel in the past.

Therefore, I recommend posting a reserve of $350K and proceeding the Court Conference this Wednesday with $300K in authority to attempt settlement. Let's see what plaintiff will do.

MARY L BLAIR | PL Claims Manager

SED01163

**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

---

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information.  If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SED01164

## Blair, Mary

| | |
|---|---|
| **From:** | Cassie Bagent <cbagent@sloanewalsh.com> |
| **Sent:** | Thursday, July 31, 2014 1:33 PM |
| **To:** | Blair, Mary; 'Rgrahn@lgllp.com'; 'Mstone@peabodyarnold.com' |
| **Cc:** | Lawrence Kenney |
| **Subject:** | Calandro Matter |
| **Attachments:** | bcc to clients (Lt Plaintiff 7-31-2014).PDF |

Please find attached "bcc" of correspondence from Attorney Kenney to Plaintiff's attorneys.
Thank you.

Cassie Bagent
  Assistant to
  *William J. Dailey, III, Esq.*
  *Lawrence J. Kenney, Jr., Esq.*
SLOANE & WALSH, LLP
Three Center Plaza
Boston, Massachusetts  02108
Voice: (617) 523-6010 x 358
Fax:  (617) 227-0927
Email: cbagent@sloanewalsh.com

**Confidentiality Notice:**  *Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521.  If you received this message erroneously, please delete this message and any attachments.  Please do not save, copy, forward or use misdirected e-mail.  Anyone misusing this e-mail will be prosecuted.  Thank you.*

SED01243

David J. Hoey, Esq.
Krzysztof G. Sobczak, Esq.
July 31, 2014


bcc:    Mary L. Bair
          *Mary.Blair@sedgwickcms.com*
          Richard Grahn, Esq.
          *rgrahn@lgllp.com*
          Michael J. Stone, Esq.
          *mstone@peabodyarnold.com*

SED01244

# SLOANE AND WALSH LLP

### Attorneys at Law

Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
Telephone (617) 523-6010
Fax: (617) 227-0927
www.sloanewalsh.com

Lawrence J. Kenney, Jr.
Direct Dial: 857-321-7029
Direct Fax: 617-303-1769
E-Mail: lkenney@sloanewalsh.com

Boston, Massachusetts
Providence, Rhode Island
Nashua, New Hampshire
Hartford, Connecticut

July 31, 2014

Via e-mail: dhoey@hoeylaw.com
And ksobczak@hoeylaw.com
David J. Hoey, Esq.
Krzysztof G. Sobczak, Esq.
LAW OFFICE OF
 DAVID J. HOEY, P.C.
352 Park Street, Suite 105
North Reading, MA  01864

> RE:   Estate of Genevieve Calandro v. Radius Management Services, Inc. et al.
>       Middlesex Superior Court Civil Action No.:  MICV2011-02874-D
>       Our File No.:  FS-400-4948

Dear Counsel:

I have been authorized to tender the full amount of the insurance coverage available to the defendants in the above referenced matter in full settlement of your client's claims.  The coverage available to the defendants is $1,000,000.  You have previously been provided with a copy of the applicable policy.

In return for such payment we would require a full release of all claims or potential claims against the named defendants and all of their agents, servants, employees, insurers, parent or affiliated companies or persons, subsidiaries, predecessors, successors and all other persons of every kind and nature in the customary and usual manner.  In addition we would require appropriate discharges of or indemnification from any Medicare or Medicaid liens that may be applicable to the care and treatment provided to Ms. Colandro.

Very truly yours,

Lawrence J. Kenney, Jr.

LJK:cb

870595.1

SED01245

David J. Hoey, Esq.
Krzysztof G. Sobczak, Esq.
July 31, 2014


bcc:   Mary L. Bair
         *Mary.Blair@sedgwickcms.com*
       Richard Grahn, Esq.
         *rgrahn@lgllp.com*
       Michael J. Stone, Esq.
         *mstone@peabodyarnold.com*

870667.1

SED01246

## Blair, Mary

| | |
|---|---|
| **From:** | Blair, Mary |
| **Sent:** | Friday, July 25, 2014 2:55 PM |
| **To:** | Shingleton, Becky A (Specialty Commercial + QA) (Becky.Shingleton@thehartford.com) |
| **Subject:** | Calandro v. Radius |

You wanted figures:

Created 10/12/11:  Ind Res:  $85K      Exp Res:  $35K

Revised 7/10/14:  Ind Res:  $350K    Exp Res:  $75 K

Expenses paid to date:  $27,877.33

## Anything else?

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

I heard from Deborah Millum.  She is desperate for the policy.  I have it and am sending it to her by email.  She wants to talk next week.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Spoke with defense counsel. He is going to call me when he gets back to the office today.  **Can you do a conference call with us on Monday?**  We want to lay the ground work for putting out the policy limits with a release.  Although I doubt that plaintiff will accept the limits at this time, it will be a good protection for Hartford against the insured and plaintiff.  It will at least give us something to bring to whomever is going to give you limits.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

1

SED01332

**Blair, Mary**

| | |
|---|---|
| **From:** | Shingleton, Becky A (Specialty Commercial + QA) |
| | <Becky.Shingleton@thehartford.com> |
| **Sent:** | Wednesday, July 23, 2014 11:53 AM |
| **To:** | Blair, Mary |
| **Cc:** | Shingleton, Becky A (Specialty Commercial + QA) |
| **Subject:** | RE: PLAINTIFF'S VERDICT  -  Penalty Phase |

Thank you, Mary.  One report down – one to go.  This is really wiping me out, I can only imagine the toll it has taken on you and Larry.  We did our best, now it's time to turn the page!

Have a good afternoon.

Becky

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Wednesday, July 23, 2014 7:58 AM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: PLAINTIFF'S VERDICT - Penalty Phase

**It does not appear that a conference call is required.  I do, however, have to complete 2 reports <u>first thing tomorrow morning</u> (that gives you a 3 hour head start!).**  Give me a call and let me know how I can help you.  If one of the reports is the Large Loss Report I can do the heading or whatever you need.  I have done them before for Meg/Antanik.

**Before doing so, I need to know whether or not it is even possible for us to pay the $1M for a full release and be done with this?**  YES.  We are fairly confident that it will come down to this and that this is the only way to fairly resolve this matter.  The deciding factor as to whether this will occur rests with plaintiff and how much <u>time</u> and <u>expenses</u> he wants to put into pursuing the judgment over policy limits – in particular the Gross Negligence finding.  It will take them some time to determine their chances of success in view of the testimony that the defendants have liquidated and/or are being liquidated and have no assets.  Plaintiff is aware we are taking an appeal and this will seriously interfere with any payment (a year or more).

Although plaintiff's counsel holds himself out as a litigator of neglect and abuse in nursing homes, he also subscribes to the Reptile strategy which in effect is his attempt to try the nursing home and not the case of the injured resident.  For years he has been trying to pierce the corporate veil.  Defense counsel and I spoke with him on the elevator and although we did not get into what he was going to do about pursuing the punitive damages, he did volunteer that the finding was what he needed to market himself for more cases.  Defense counsel had already opined on this. We anticipate that once the judgment is issued we will see the case in Lawyer's Weekly before the appeals are decided.  Plaintiff and defense counsel in Massachusetts are familiar with Attorney Hoey's pursuit of this line of litigation. Whether the plaintiff will settle for policy limits without a pursuit of the excess remains to be seen.

**I also need a better idea of the chance for appeal.**  Our chances for an appeal are very good. First we need the award from the Court before we can start any activity.  When that is received we will be filing post-trial motions .  In particular we will be filling a JNOV (judgment notwithstanding the verdict) motion and at the same time a remitter will be filed. We will need to provide specific reasons entitling us to relief and they will follow closely as to the Directed

SED01360

Verdict motions we filed.  Defense counsel and I spoke briefly about the appeal issues and have the following reasons that will be filed:

1).  The Wrongful Death finding was against the evidence that was presented.
2).  The Gross Negligence instructions were not correct.
3).  There was no evidence to substantiate a finding of Gross Negligence.
4).  The cost reports for 2008 should not have been included for consideration in the penalty phase.

Defense counsel is confident that we have enough for the appeal.  With respect to the Gross Negligence finding by the jury, there is a high standard in Massachusetts and rarely has there been an award. Gross Negligence can only be considered on Wrongful Death cases.

**Can DC give us a quick report?** He is working on a report which we will probably not have until the weekend because he is back in Court this morning starting another trial.

**Does he have any idea what went wrong?** He believes we had a bad jury and although they did not reflect anything one way or the other during the jury pick, they certainly had issues with nursing homes.  They ignored the testimony of the witnesses who clearly put the blame on the attending physician.

**How can we be hit so hard when we admitted liability and we were trying the case on damages only?** I believe that the jury had issues by us admitting to liability.  They were glad to look at the damages but did not pay attention to the testimony.  The jury knew we admitted to certain liability issues, but did not apply the damages correctly to the question.  They faulted us for all injuries (including Calandro's death) which we did not cause.

**Was the insured previously advised, in writing, that punitive damages were not covered?  Did we ever receive a written policy limit demand?** There is no written notice to the insured for punitive damages and there is no formal demand for $1M demand other than emails to defense counsel.

**THANK YOU:**  This is unbelievable!  Fortunately, my boss (and hers) are both great and very supportive.  They understand the basis for our evaluation and decision – this result was simply unpredictable.

Mary L Blair | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Tuesday, July 22, 2014 6:40 PM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: PLAINTIFF'S VERDICT - Penalty Phase

It does not appear that a conference call is required.  I do, however, have to complete 2 reports first thing tomorrow morning (that gives you a 3 hour head start!).

Before doing so, I need to know whether or not it is even possible for us to pay the $1M for a full release and be done with this?  I also need a better idea of the chance for appeal.

SED01361

Can DC give us a quick report? Does he have any idea what went wrong?  How can we be hit so hard when we admitted liability and we were trying the case on damages only?

Was the insured previously advised, in writing, that punitive damages were not covered? Did we ever receive a written policy limit demand?

This is unbelievable!  Fortunately, my boss (and hers) are both great and very supportive.  They understand the basis for our evaluation and decision – this result was simply unpredictable.

**Becky A. Shingleton, SCLA**
*TPA Services Consultant*

The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax: (860) 392 - 1846
Email: Becky.Shingleton@thehartford.com

---

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Tuesday, July 22, 2014 3:12 PM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** PLAINTIFF'S VERDICT - Penalty Phase

I left you a message  -  the verdict on the penalty phase: $12,515,000.  Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence? The jury hear testimony this morning from the former CFO of Radius.  None of the defendant entities are in business, several have been liquidated and the remaining are being liquidated.  They have no assets.  The cost control reports (public record) we put into evidence.  It is not known, first of all, what the basis was for the jury to conclude what  negligence of Radius constituted gross negligence.  Secondly, we do not know how the jury arrived at a figure of $12M plus in damages.  We have several appealable issues to use for the punitive damages.

I am available at any time on Wednesday, Thursday, or Friday for our conference call.  I have access to a call in number if that helps.

Mary L Blair | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 6:16 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** PLAINTIFF'S VERDICT
**Importance:** High

There was a plaintiff's verdict today a short time ago that has left us stunned.  Total of $1,425,000.

SED01362

#1:  Was the negligence of Radius a substantial contributing factor in causing conscious pain and suffering to Calandro during her life?    YES   $675K

#2:  Was the negligence of Radius a substantial contributing factor causing the death of Calandro?  YES $750K

There was also a question regarding gross negligence:  Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence?  The Judge has ordered the jury to return tomorrow to hear evidence from a Radius representative on cost reports. We are working on this right now and will return to Court tomorrow at 10:00 to address this matter.

I can be reached on my cell phone at 978-587-1499 if you have the chance to call me.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 8:20 AM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I attended the trial on Thursday and Friday and the defense has put on a strong case. We have been able to get plaintiff's death certificate were as a result of the care by Radius.  The medical expert testified that the former co-defendant doctor was the breach of the standard of care contributing to the death of the plaintiff and by mistake told the jury that the doctor has settled out already (greedy plaintiff?).  The second expert testified that he was a professional witness and attempted to put all the blame on the facility.  Plaintiff's testified on Friday -  nothing new from them.

Our expert is going to testify this morning (causation and injuries) and then the jury will charge the jury.  Plaintiff's counsel has used every attempt possible to disparage the facility and get liability issues before the jury.  A considerable amount of time was spent at sidebar because of this.

If you want to get a message to me, please use my voicemail.  No wifi at Court.

I hope my next message to you is that we have a defense verdict.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Wednesday, July 16, 2014 10:40 AM
**To:** Blair, Mary

SED01363

**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services

You do.

**Becky A. Shingleton, SCLA**
*TPA Services Consultant*

The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax: (860) 392 - 1846
Email: Becky.Shingleton@thehartford.com

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Tuesday, July 15, 2014 4:33 PM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

**Friday July 11, 2014:**  We filed answers to plaintiff's opposition and Motions in Limine.  A copy (without exhibits) is attached (#1) – very interesting and educational for the sake of plaintiff's counsel.  There was no activity by plaintiff's.  The Court called and changed the conference with the Judge from Tuesday to Monday.

**Monday July 14, 2014:**  Defense counsel appeared in Court to argue the Motions and it was very apparent that the Judge was not buying any of plaintiff's attempts to bring in liability or to pierce the corporate veil to bring in the senior Radius entities. Most all of the Motions were denied and plaintiff's counsel told the Court he was having trouble getting his experts to be available. Plaintiff's counsel advised the Court that he would be calling both experts and the son and his wife (plts).  He also advised that he would subpoena 25 Radius witnesses to testify and they Judge politely told him that he should only call the ones that had knowledge of this case (in fact none of them do) and that he should submit proffer of same.  Defense counsel agreed.

The Judge advised that he wants to impanel on Wednesday and start trial on Thursday.  The Judge also advised that he would not be able to hear the case on Friday and told us to have our expert ready for Monday.

**Tuesday July 15, 2014:**  In spite of what went on in Court yesterday, plaintiff's counsel submitted the attached (#2) Amended Witness List.  Doesn't he get it?  Discovery is done!  At any rate defense counsel has filed an Emergency Motion to Quash the subpoenas and a Motion for a Protective Order (#3). This was delivered timely to the Court this afternoon so it will be dealt with tomorrow when the parties convene before the Judge to sort out the final Motions and begin to impanel.  A copy of Defendant's Statement to the Jury is attached (#4).

Plaintiff's counsel called defense counsel and wanted his consent to move the trial date.  We said "no".  Fortunately defense counsel has another trial starting on Wednesday of next week. We were notified by the Court this afternoon that there will be no extension of the trial date and that the Judge is available to hear the case on Friday.

Plaintiff's counsel is really scrambling now and is not doing his own reputation very good in the Massachusetts Court. We have had many cases with plaintiff's counsel over the years but this is really crazy.  I am not going to attend tomorrow's motion hearing or the impaneling, but I will however attend the trial proceedings.  Plaintiff's counsel has known me for many years and I do not want to be available with settlement authority (Do I still have $250K?) until after the trial starts.  It is pretty much confirmed that the co-defendant settled for $250K and there is no way we should pay more than that amount and there is no way that plaintiff will accept anything lower than that amount.  The choice then comes down to whether to take the case to verdict.  Hopefully plaintiff's counsel will make the decision easier for us and not want a reasonable

5

SED01364

settlement.  We believe we will do well with the jury and any award will be offset by what the co-defendant paid.  So, if the jury awarded anything up to $250K we would pay nothing.

You thoughts and comments are welcome.  I will let you know what transpires tomorrow.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 7:57 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I just returned to the office after sitting with defense counsel and staff.  They are preparing to answer over a dozen Motions in Limine propounded by plaintiff's counsel.  Interestingly is that they involve things such as:

1. Sanctions against defense counsel for not producing all the records of the deceased from the facility.  There is also an inference against defense counsel of spoliation.
2. A motion to spend extra time with the jurors during the voir dire process.
3. A motion to bring into trial the fact that the facility (now defunct) was being operated by several other entities who appeared to have shaved money from the facility.
4. Etc., etc.

Responses to the motions are being dictated tonight and I will have copies of them later tomorrow.

We discussed what plaintiff's counsel was trying to prove by bringing up the numerous liability issues when we have conceded to liability. Most of his tactics are aimed at liability – standard of care issues.  We are fairly confident that we have a strong argument for causation and injuries.  Plaintiff is hard pressed to avoid the co-morbidities and conditions of the 91 year old plaintiff.

We talked about a verdict range between $300K-$500K. It should also be noted that we will receive a credit for whatever the co-defendant paid. We surmise that they got a $250K settlement which would come off the top of any award against us.

I will give you another status tomorrow.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 1:58 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

Current indemnity is $85K and expense is $35K.  It will be revised to $350K indemnity and $75K expenses.

SED01365

Over the 4th of July weekend plaintiff's counsel sent an email to defense counsel (on vacation through Monday). It stated that if we did not make "an offer of more than $500K by 3:00 PM tomorrow (Monday)" then there would be no more talking and that they would try the case on the 17th.   There was no indication that $500K plus would even settle the case.  Defense counsel picked up the message when he returned to the office on Tuesday and contacted co-defendant's counsel to see where they stood.  It was at that time that we learned that the co-defendant's carrier settled directly with plaintiff's counsel.  Co-defendant's counsel said he had nothing to do with it and that he could not divulge the amount.

On Wednesday defense counsel sent an associate to the Court Conference as defense counsel was in New York.  Plaintiff's counsel is attempting to file a massive amount of motions that have nothing to do with the causation issues and more to do with liability and piercing the corporate veil.  We explained to the Judge that we had stipulated to liability and the Judge told plaintiff's counsel he did not understand what he was trying to achieve but that he would look at the motions. The Judge wants to meet with both sides again on Tuesday the 15th , since a settlement cannot be reached we will impanel on Wednesday the 16th and trial will begin on Thursday the 17th.

Defense counsel is responding to plaintiff's motions and I will be meeting with them in a few hours to go over everything and to determine a strategy.  I will get back to you later today.

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Tuesday, July 08, 2014 6:34 PM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services
**Importance:** High

Please let me know what the current indemnity and expense reserve is so that I can report the net increase.

Thanks,

Becky

---

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Monday, July 07, 2014 9:29 AM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

# JULY 17, 2014 TRIAL - RESERVE/SETTLEMENT AUTHORITY

**RE:  :   Insured:** Radius Management Services, Inc – Radius Healthcare of Danvers
        **Claimant:** Genevieve Calandro
        **Policy No.:** ZY0004802
        **Claim No.:** 3400031

SED01366

**Date of Loss:** 8/16/08

**CASE SYNOPSIS:** Calandro, age 94, was admitted to Radius Danvers, MA on 12/13/07 from an assisted living facility in Detroit MI. It appears she remained at the facility with no unexpected issues until July 2008. At that time she began complaining of not feeling well. On 7/9/08 her physician ordered numerous lab tests and with the consent of Calandro's son, ordered antibiotic treatment, coccyx wound care and nutrition care with the goal of giving her comfort. On 7/11/08 Calandro fell out of her wheelchair in the dining room and struck her head receiving a laceration above her right eye. She was sent to the ER and admitted with diagnoses of posttraumatic intracranial intracerebral contusion, acute appendicitis, dehydration with renal failure and urosepsis. She remained hospitalized until 7/22/08 and was sent to another skilled facility for continuing antibiotic therapy. Her overall conditions continued to decline so that on 8/5/08 Calandro was sent to the hospital where she stayed until 8/12/08 without significant improvement. She was discharged to Hospice care and died on 8/16/08. Her cause of death was listed as Congestive Heart Failure with Acute Renal Failure as an underlying cause. Other conditions contributing to death were acute appendicitis, diabetes T2, and splenic abscess.

**STATUS:**  Last week defense counsel was advised of a Trial date for this case.  They went forward with doing a Pre-Trial Report (attached #1) and I am supplementing their report to fill in other information for your benefit.  This is a First State Management Group file that is completely manual and paper and was previously reported to TPA Services. Let me know if you cannot locate the file and I will get more information to you.

1. Plaintiff's counsel did no discovery on the case until April 2014.  At that time they realized we had nobody to testify for the Radius entities because they had been dissolved and no longer legally existed.  Even though we advised plaintiff's counsel of this, on April 7th (attached #2) they served us with notice to take 28 depositions in one day every 15 minutes.  Obviously we were unable to comply with the request.  This was followed up by plaintiff's 2-day suspended deposition of co-defendant Dr. David Wahl (treating physician and Medical Director).  As you will see from the April 28th (attached #3) depo summary, co-defendant suffers from depression and let his medical license lapse.  He is certainly not going to be a credible witness.  In April plaintiff (the son of Calandro) testified sincerely and we believe a jury will find him likeable and a sympathetic witness.

2. Plaintiff served his expert disclosures on April 27th  (attached #4) which we were waiting to obtain.  With this information and the records we had Dr. Terrence O'Malley as our expert we were able to present the reports to our expert for a defense opinion (attached #5).  He concluded that the plaintiff's death was as a result of a significant decline of her physical condition due to her pre-existing co-morbidities, advanced age and dementia.  Both plaintiff's expert and defense experts agree that the decline began after Colandro left Radius and was at Cedar Glen facility.

3. Based on our inability to produce anybody to testify and the strength of our medical review for the causation issues, we filed the attached (#6) Stipulation.  We are conceding to liability for a breach of the standard of care and will try the case on the injury and causation issues.

4. Plaintiff initially was looking at a global demand of $500K, but because of issues with co-defendant's carrier they increased the demand to $1M each.  Defense counsel and I are very well known to plaintiff's counsel and have always had a good working relationship with them as they try to take over the plaintiff's nursing home litigation.  PC is a professor for the Reptile strategy.  We have tried to get him to settle out separately with us and he has yet to respond.  Meanwhile, I was able to get co-defendant's carrier to contribute $250K to a global settlement of $500K in the event that plaintiff decides not to try the case.

5. Defendants have requested and received a Court Conference (in 2-days) on July 9th to determine if plaintiff will settle out or if they are going to try the case. The Trial is supposed to starts on a Thursday (odd day) and we are not certain whether it will be reached that day.

SED01367

**RECOMMENDATIONS:** We will be attending the conference on the 9th with an attempt to see if we can settle out separately rather than to try the case. Co-defendant does not want to contribute any additional money until it is determined whether or not plaintiff will settle globally and for what amount. They have also filed a Stipulation to try the case on damages. It is our opinion that they are the target of the plaintiff. We do not believe that a jury will award more than $500K + $200K interest for a total of $700K worst case scenario. This would leave us at 50% or $350K. Our recommendation is to attend the Court Conference to attempt to settle out separately on the best figure up to $300K. Plaintiff's counsel may give us no choice by to try the case based on the amount they are demanding. This has happened with plaintiff's counsel in the past.

Therefore, I recommend posting a reserve of $350K and proceeding the Court Conference this Wednesday with $300K in authority to attempt settlement. Let's see what plaintiff will do.


MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

*****************************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*****************************************************************

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

*****************************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*****************************************************************

SED01368

**Blair, Mary**

| | |
|---|---|
| **From:** | Shingleton, Becky A (Specialty Commercial + QA) |
| | <Becky.Shingleton@thehartford.com> |
| **Sent:** | Tuesday, July 22, 2014 6:40 PM |
| **To:** | Blair, Mary |
| **Cc:** | Shingleton, Becky A (Specialty Commercial + QA) |
| **Subject:** | RE: PLAINTIFF'S VERDICT  -  Penalty Phase |

It does not appear that a conference call is required. I do, however, have to complete 2 reports first thing tomorrow morning (that gives you a 3 hour head start!).

Before doing so, I need to know whether or not it is even possible for us to pay the $1M for a full release and be done with this? I also need a better idea of the chance for appeal.

Can DC give us a quick report? Does he have any idea what went wrong? How can we be hit so hard when we admitted liability and we were trying the case on damages only?

Was the insured previously advised, in writing, that punitive damages were not covered? Did we ever receive a written policy limit demand?

This is unbelievable! Fortunately, my boss (and hers) are both great and very supportive. They understand the basis for our evaluation and decision – this result was simply unpredictable.

***Becky A. Shingleton, SCLA***
*TPA Services Consultant*

The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax:  (860) 392 - 1846
Email:  Becky.Shingleton@thehartford.com

---

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Tuesday, July 22, 2014 3:12 PM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** PLAINTIFF'S VERDICT - Penalty Phase

I left you a message  -  the verdict on the penalty phase: $12,515,000. Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence? The jury hear testimony this morning from the former CFO of Radius.  None of the defendant entities are in business, several have been liquidated and the remaining are being liquidated.  They have no assets.  The cost control reports (public record) we put into evidence.  It is not known, first of all, what the basis was for the jury to conclude what  negligence of Radius constituted gross negligence.  Secondly, we do not know how the jury arrived at a figure of $12M plus in damages.  We have several appealable issues to use for the punitive damages.

I am available at any time on Wednesday, Thursday, or Friday for our conference call.  I have access to a call in number if that helps.

1

SED01378

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 6:16 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** PLAINTIFF'S VERDICT
**Importance:** High

There was a plaintiff's verdict today a short time ago that has left us stunned.  Total of $1,425,000.

#1:  Was the negligence of Radius a substantial contributing factor in causing conscious pain and suffering to Calandro during her life?    YES   $675K

#2:  Was the negligence of Radius a substantial contributing factor causing the death of Calandro?  YES  $750K

There was also a question regarding gross negligence:  Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence?  The Judge has ordered the jury to return tomorrow to hear evidence from a Radius representative on cost reports. We are working on this right now and will return to Court tomorrow at 10:00 to address this matter.

I can be reached on my cell phone at 978-587-1499 if you have the chance to call me.

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 8:20 AM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I attended the trial on Thursday and Friday and the defense has put on a strong case. We have been able to get plaintiff's death certificate were as a result of the care by Radius.  The medical expert testified that the former co-defendant doctor was the breach of the standard of care contributing to the death of the plaintiff and by mistake told the jury that the doctor has settled out already (greedy plaintiff?).  The second expert testified that he was a professional witness and attempted to put all the blame on the facility.  Plaintiff's testified on Friday -  nothing new from them.

Our expert is going to testify this morning (causation and injuries) and then the jury will charge the jury.  Plaintiff's counsel has used every attempt possible to disparage the facility and get liability issues before the jury.  A considerable amount of time was spent at sidebar because of this.

SED01379

If you want to get a message to me, please use my voicemail.  No wifi at Court.

I hope my next message to you is that we have a defense verdict.

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Wednesday, July 16, 2014 10:40 AM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services

You do.

*Becky A. Shingleton, SCLA*
*TPA Services Consultant*

The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax:  (860) 392 - 1846
Email:  Becky.Shingleton@thehartford.com

---

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Tuesday, July 15, 2014 4:33 PM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

**Friday July 11, 2014:**  We filed answers to plaintiff's opposition and Motions in Limine.  A copy (without exhibits) is attached (#1) – very interesting and educational for the sake of plaintiff's counsel.  There was no activity by plaintiff's.  The Court called and changed the conference with the Judge from Tuesday to Monday.

**Monday July 14, 2014:**  Defense counsel appeared in Court to argue the Motions and it was very apparent that the Judge was not buying any of plaintiff's attempts to bring in liability or to pierce the corporate veil to bring in the senior Radius entities. Most all of the Motions were denied and plaintiff's counsel told the Court he was having trouble getting his experts to be available. Plaintiff's counsel advised the Court that he would be calling both experts and the son and his wife (plts).  He also advised that he would subpoena 25 Radius witnesses to testify and they Judge politely told him that he should only call the ones that had knowledge of this case (in fact none of them do) and that he should submit proffer of same.  Defense counsel agreed.

The Judge advised that he wants to impanel on Wednesday and start trial on Thursday.  The Judge also advised that he would not be able to hear the case on Friday and told us to have our expert ready for Monday.

**Tuesday July 15, 2014:**  In spite of what went on in Court yesterday, plaintiff's counsel submitted the attached (#2) Amended Witness List.  Doesn't he get it?  Discovery is done!  At any rate defense counsel has filed an Emergency Motion to Quash the subpoenas and a Motion for a Protective Order (#3). This was delivered timely to the Court this afternoon so it will be dealt with tomorrow when the parties convene before the Judge

3

SED01380

to sort out the final Motions and begin to impanel.  A copy of Defendant's Statement to the Jury is attached (#4).

Plaintiff's counsel called defense counsel and wanted his consent to move the trial date.  We said "no".  Fortunately defense counsel has another trial starting on Wednesday of next week. We were notified by the Court this afternoon that there will be no extension of the trial date and that the Judge is available to hear the case on Friday.

Plaintiff's counsel is really scrambling now and is not doing his own reputation very good in the Massachusetts Court. We have had many cases with plaintiff's counsel over the years but this is really crazy.  I am not going to attend tomorrow's motion hearing or the impaneling, but I will however attend the trial proceedings.  Plaintiff's counsel has known me for many years and I do not want to be available with settlement authority (Do I still have $250K?) until after the trial starts.  It is pretty much confirmed that the co-defendant settled for $250K and there is no way we should pay more than that amount and there is no way that plaintiff will accept anything lower than that amount.  The choice then comes down to whether to take the case to verdict.  Hopefully plaintiff's counsel will make the decision easier for us and not want a reasonable settlement.  We believe we will do well with the jury and any award will be offset by what the co-defendant paid.  So, if the jury awarded anything up to $250K we would pay nothing.

You thoughts and comments are welcome.  I will let you know what transpires tomorrow.

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 7:57 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I just returned to the office after sitting with defense counsel and staff.  They are preparing to answer over a dozen Motions in Limine propounded by plaintiff's counsel. Interestingly is that they involve things such as:

1. Sanctions against defense counsel for not producing all the records of the deceased from the facility.  There is also an inference against defense counsel of spoliation.
2. A motion to spend extra time with the jurors during the voir dire process.
3. A motion to bring into trial the fact that the facility (now defunct) was being operated by several other entities who appeared to have shaved money from the facility.
4. Etc., etc.

Responses to the motions are being dictated tonight and I will have copies of them later tomorrow.

We discussed what plaintiff's counsel was trying to prove by bringing up the numerous liability issues when we have conceded to liability. Most of his tactics are aimed at liability – standard of care issues.  We are fairly confident that we have a strong argument for causation and injuries.  Plaintiff is hard pressed to avoid the co-morbidities and conditions of the 91 year old plaintiff.

We talked about a verdict range between $300K-$500K. It should also be noted that we will receive a credit for whatever the co-defendant paid. We surmise that they got a $250K settlement which would come off the top of any award against us.

I will give you another status tomorrow.

4

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 1:58 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

Current indemnity is $85K and expense is $35K.  It will be revised to $350K indemnity and $75K expenses.

Over the 4th of July weekend plaintiff's counsel sent an email to defense counsel (on vacation through Monday). It stated that if we did not make "an offer of more than $500K by 3:00 PM tomorrow (Monday)" then there would be no more talking and that they would try the case on the 17th.   There was no indication that $500K plus would even settle the case.  Defense counsel picked up the message when he returned to the office on Tuesday and contacted co-defendant's counsel to see where they stood.  It was at that time that we learned that the co-defendant's carrier settled directly with plaintiff's counsel.  Co-defendant's counsel said he had nothing to do with it and that he could not divulge the amount.

On Wednesday defense counsel sent an associate to the Court Conference as defense counsel was in New York.  Plaintiff's counsel is attempting to file a massive amount of motions that have nothing to do with the causation issues and more to do with liability and piercing the corporate veil.  We explained to the Judge that we had stipulated to liability and the Judge told plaintiff's counsel he did not understand what he was trying to achieve but that he would look at the motions. The Judge wants to meet with both sides again on Tuesday the 15th , since a settlement cannot be reached we will impanel on Wednesday the 16th and trial will begin on Thursday the 17th.

Defense counsel is responding to plaintiff's motions and I will be meeting with them in a few hours to go over everything and to determine a strategy.  I will get back to you later today.

**MARY L BLAIR** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Tuesday, July 08, 2014 6:34 PM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services
**Importance:** High

Please let me know what the current indemnity and expense reserve is so that I can report the net increase.

5

SED01382

Thanks,

Becky

---

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Monday, July 07, 2014 9:29 AM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

# JULY 17, 2014 TRIAL - RESERVE/SETTLEMENT AUTHORITY

RE:  :   **Insured:** Radius Management Services, Inc – Radius Healthcare of Danvers
       **Claimant:** Genevieve Calandro
       **Policy No.:** ZY0004802
       **Claim No.:** 3400031
       **Date of Loss:** 8/16/08

**CASE SYNOPSIS:** Calandro, age 94, was admitted to Radius Danvers, MA on 12/13/07 from an assisted living facility in Detroit MI. It appears she remained at the facility with no unexpected issues until July 2008. At that time she began complaining of not feeling well. On 7/9/08 her physician ordered numerous lab tests and with the consent of Calandro's son, ordered antibiotic treatment, coccyx wound care and nutrition care with the goal of giving her comfort. On 7/11/08 Calandro fell out of her wheelchair in the dining room and struck her head receiving a laceration above her right eye. She was sent to the ER and admitted with diagnoses of posttraumatic intracranial intracerebral contusion, acute appendicitis, dehydration with renal failure and urosepsis. She remained hospitalized until 7/22/08 and was sent to another skilled facility for continuing antibiotic therapy. Her overall conditions continued to decline so that on 8/5/08 Calandro was sent to the hospital where she stayed until 8/12/08 without significant improvement. She was discharged to Hospice care and died on 8/16/08. Her cause of death was listed as Congestive Heart Failure with Acute Renal Failure as an underlying cause. Other conditions contributing to death were acute appendicitis, diabetes T2, and splenic abscess.

**STATUS:** Last week defense counsel was advised of a Trial date for this case. They went forward with doing a Pre-Trial Report (attached #1) and I am supplementing their report to fill in other information for your benefit. This is a First State Management Group file that is completely manual and paper and was previously reported to TPA Services. Let me know if you cannot locate the file and I will get more information to you.

1. Plaintiff's counsel did no discovery on the case until April 2014. At that time they realized we had nobody to testify for the Radius entities because they had been dissolved and no longer legally existed. Even though we advised plaintiff's counsel of this, on April 7th (attached #2) they served us with notice to take 28 depositions in one day every 15 minutes. Obviously we were unable to comply with the request. This was followed up by plaintiff's 2-day suspended deposition of co-defendant Dr. David Wahl (treating physician and Medical Director). As you will see from the April 28th (attached #3) depo summary, co-defendant suffers from depression and let his medical license lapse. He is certainly not going to be a credible witness. In April plaintiff (the son of Calandro) testified sincerely and we believe a jury will find him likeable and a sympathetic witness.

2. Plaintiff served his expert disclosures on April 27th (attached #4) which we were waiting to obtain. With this information and the records we had Dr. Terrence O'Malley as our expert we were able to present the reports to our expert for a defense opinion (attached #5). He concluded that the plaintiff's death was as a result of a significant decline of her physical condition due to her pre-existing co-morbidities, advanced age and dementia. Both plaintiff's expert and defense experts agree that the decline began after Colandro left Radius and was at Cedar Glen facility.

SED01383

3. Based on our inability to produce anybody to testify and the strength of our medical review for the causation issues, we filed the attached (#6) Stipulation. We are conceding to liability for a breach of the standard of care and will try the case on the injury and causation issues.

4. Plaintiff initially was looking at a global demand of $500K, but because of issues with co-defendant's carrier they increased the demand to $1M each. Defense counsel and I are very well known to plaintiff's counsel and have always had a good working relationship with them as they try to take over the plaintiff's nursing home litigation. PC is a professor for the Reptile strategy. We have tried to get him to settle out separately with us and he has yet to respond. Meanwhile, I was able to get co-defendant's carrier to contribute $250K to a global settlement of $500K in the event that plaintiff decides not to try the case.

5. Defendants have requested and received a Court Conference (in 2-days) on July 9th to determine if plaintiff will settle out or if they are going to try the case. The Trial is supposed to starts on a Thursday (odd day) and we are not certain whether it will be reached that day.

**RECOMMENDATIONS:** We will be attending the conference on the 9th with an attempt to see if we can settle out separately rather than to try the case. Co-defendant does not want to contribute any additional money until it is determined whether or not plaintiff will settle globally and for what amount. They have also filed a Stipulation to try the case on damages. It is our opinion that they are the target of the plaintiff. We do not believe that a jury will award more than $500K + $200K interest for a total of $700K worst case scenario. This would leave us at 50% or $350K. Our recommendation is to attend the Court Conference to attempt to settle out separately on the best figure up to $300K. Plaintiff's counsel may give us no choice by to try the case based on the amount they are demanding. This has happened with plaintiff's counsel in the past.

Therefore, I recommend posting a reserve of $350K and proceeding the Court Conference this Wednesday with $300K in authority to attempt settlement. Let's see what plaintiff will do.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

*********************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*********************************************************

SED01384

**Blair, Mary**

| | |
|---|---|
| **From:** | Schermer, Dolores - RMS <DSchermer@RadiusManagement.com> |
| **Sent:** | Tuesday, July 22, 2014 11:48 PM |
| **To:** | Blair, Mary; Liz Finn  Elder (EFinn-Elder@sallop.com); Lawrence Kenney (LKenney@sloanewalsh.com) |
| **Cc:** | Schermer, Dolores - RMS |
| **Subject:** | Radius Case |

*Hi All,*
*I heard about the findings of the jury today…what happened?  Next steps?*
*Dolores*


*Dolores Schermer*
*Radius Executive Solutions*
*92 Montvale Avenue*
*Stoneham, MA 02180*
*Office:  781 213 9099*
*Cell:  781 710 9972*

SED01385

## Blair, Mary

| | |
|---|---|
| **From:** | Blair, Mary |
| **Sent:** | Tuesday, July 22, 2014 6:12 PM |
| **To:** | 'Shingleton, Becky A (Specialty Commercial + QA)' |
| **Subject:** | PLAINTIFF'S VERDICT  -  Penalty Phase |

I left you a message  -  the verdict on the penalty phase: $12,515,000.  Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence? The jury hear testimony this morning from the former CFO of Radius.  None of the defendant entities are in business, several have been liquidated and the remaining are being liquidated.  They have no assets.  The cost control reports (public record) we put into evidence.  It is not known, first of all, what the basis was for the jury to conclude what  negligence of Radius constituted gross negligence.  Secondly, we do not know how the jury arrived at a figure of $12M plus in damages.  We have several appealable issues to use for the punitive damages.

I am available at any time on Wednesday, Thursday, or Friday for our conference call.  I have access to a call in number if that helps.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 6:16 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** PLAINTIFF'S VERDICT
**Importance:** High

There was a plaintiff's verdict today a short time ago that has left us stunned.  Total of $1,425,000.

#1:  Was the negligence of Radius a substantial contributing factor in causing conscious pain and suffering to Calandro during her life?   YES   $675K

#2:  Was the negligence of Radius a substantial contributing factor causing the death of Calandro?  YES  $750K

There was also a question regarding gross negligence:  Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence?  The Judge has ordered the jury to return tomorrow to hear evidence from a Radius representative on cost reports. We are working on this right now and will return to Court tomorrow at 10:00 to address this matter.

I can be reached on my cell phone at 978-587-1499 if you have the chance to call me.

MARY L BLAIR | PL Claims Manager

1

SED01386

**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com  |  *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 8:20 AM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I attended the trial on Thursday and Friday and the defense has put on a strong case. We have been able to get plaintiff's death certificate were as a result of the care by Radius. The medical expert testified that the former co-defendant doctor was the breach of the standard of care contributing to the death of the plaintiff and by mistake told the jury that the doctor has settled out already (greedy plaintiff?). The second expert testified that he was a professional witness and attempted to put all the blame on the facility. Plaintiff's testified on Friday - nothing new from them.

Our expert is going to testify this morning (causation and injuries) and then the jury will charge the jury. Plaintiff's counsel has used every attempt possible to disparage the facility and get liability issues before the jury. A considerable amount of time was spent at sidebar because of this.

If you want to get a message to me, please use my voicemail. No wifi at Court.

I hope my next message to you is that we have a defense verdict.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com  |  *The leader in innovative claims and productivity management solutions*

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Wednesday, July 16, 2014 10:40 AM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services

You do.

**Becky A. Shingleton, SCLA**
*TPA Services Consultant*

The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax:  (860) 392 - 1846
Email:  Becky.Shingleton@thehartford.com

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Tuesday, July 15, 2014 4:33 PM

2

SED01387

**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

**Friday July 11, 2014:**  We filed answers to plaintiff's opposition and Motions in Limine.  A copy (without exhibits) is attached (#1) – very interesting and educational for the sake of plaintiff's counsel.  There was no activity by plaintiff's.  The Court called and changed the conference with the Judge from Tuesday to Monday.

**Monday July 14, 2014:**  Defense counsel appeared in Court to argue the Motions and it was very apparent that the Judge was not buying any of plaintiff's attempts to bring in liability or to pierce the corporate veil to bring in the senior Radius entities.  Most all of the Motions were denied and plaintiff's counsel told the Court he was having trouble getting his experts to be available.  Plaintiff's counsel advised the Court that he would be calling both experts and the son and his wife (plts).  He also advised that he would subpoena 25 Radius witnesses to testify and they Judge politely told him that he should only call the ones that had knowledge of this case (in fact none of them do) and that he should submit proffer of same.  Defense counsel agreed.

The Judge advised that he wants to impanel on Wednesday and start trial on Thursday.  The Judge also advised that he would not be able to hear the case on Friday and told us to have our expert ready for Monday.

**Tuesday July 15, 2014:**  In spite of what went on in Court yesterday, plaintiff's counsel submitted the attached (#2) Amended Witness List.  Doesn't he get it?  Discovery is done!  At any rate defense counsel has filed an Emergency Motion to Quash the subpoenas and a Motion for a Protective Order (#3). This was delivered timely to the Court this afternoon so it will be dealt with tomorrow when the parties convene before the Judge to sort out the final Motions and begin to impanel.  A copy of Defendant's Statement to the Jury is attached (#4).

Plaintiff's counsel called defense counsel and wanted his consent to move the trial date.  We said "no".  Fortunately defense counsel has another trial starting on Wednesday of next week.  We were notified by the Court this afternoon that there will be no extension of the trial date and that the Judge is available to hear the case on Friday.

Plaintiff's counsel is really scrambling now and is not doing his own reputation very good in the Massachusetts Court.  We have had many cases with plaintiff's counsel over the years but this is really crazy.  I am not going to attend tomorrow's motion hearing or the impaneling, but I will however attend the trial proceedings.  Plaintiff's counsel has known me for many years and I do not want to be available with settlement authority (Do I still have $250K?) until after the trial starts.  It is pretty much confirmed that the co-defendant settled for $250K and there is no way we should pay more than that amount and there is no way that plaintiff will accept anything lower than that amount.  The choice then comes down to whether to take the case to verdict.  Hopefully plaintiff's counsel will make the decision easier for us and not want a reasonable settlement.  We believe we will do well with the jury and any award will be offset by what the co-defendant paid.  So, if the jury awarded anything up to $250K we would pay nothing.

You thoughts and comments are welcome.  I will let you know what transpires tomorrow.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 7:57 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

SED01388

I just returned to the office after sitting with defense counsel and staff.  They are preparing to answer over a dozen Motions in Limine propounded by plaintiff's counsel. Interestingly is that they involve things such as:

1. Sanctions against defense counsel for not producing all the records of the deceased from the facility.  There is also an inference against defense counsel of spoliation.
2. A motion to spend extra time with the jurors during the voir dire process.
3. A motion to bring into trial the fact that the facility (now defunct) was being operated by several other entities who appeared to have shaved money from the facility.
4. Etc., etc.

Responses to the motions are being dictated tonight and I will have copies of them later tomorrow.

We discussed what plaintiff's counsel was trying to prove by bringing up the numerous liability issues when we have conceded to liability. Most of his tactics are aimed at liability – standard of care issues.  We are fairly confident that we have a strong argument for causation and injuries.  Plaintiff is hard pressed to avoid the co-morbidities and conditions of the 91 year old plaintiff.

We talked about a verdict range between $300K-$500K. It should also be noted that we will receive a credit for whatever the co-defendant paid. We surmise that they got a $250K settlement which would come off the top of any award against us.

I will give you another status tomorrow.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 1:58 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

Current indemnity is $85K and expense is $35K.  It will be revised to $350K indemnity and $75K expenses.

Over the 4th of July weekend plaintiff's counsel sent an email to defense counsel (on vacation through Monday). It stated that if we did not make "an offer of more than $500K by 3:00 PM tomorrow (Monday)" then there would be no more talking and that they would try the case on the 17th.  There was no indication that $500K plus would even settle the case.  Defense counsel picked up the message when he returned to the office on Tuesday and contacted co-defendant's counsel to see where they stood.  It was at that time that we learned that the co-defendant's carrier settled directly with plaintiff's counsel.  Co-defendant's counsel said he had nothing to do with it and that he could not divulge the amount.

On Wednesday defense counsel sent an associate to the Court Conference as defense counsel was in New York.  Plaintiff's counsel is attempting to file a massive amount of motions that have nothing to do with the causation issues and more to do with liability and piercing the corporate veil.  We explained to the Judge that we had stipulated to liability and the Judge told plaintiff's counsel he did not understand what he was trying to achieve but that he would look at the motions. The Judge wants

SED01389

to meet with both sides again on Tuesday the 15th, since a settlement cannot be reached we will impanel on Wednesday the 16th and trial will begin on Thursday the 17th.

Defense counsel is responding to plaintiff's motions and I will be meeting with them in a few hours to go over everything and to determine a strategy. I will get back to you later today.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Tuesday, July 08, 2014 6:34 PM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services
**Importance:** High

Please let me know what the current indemnity and expense reserve is so that I can report the net increase.

Thanks,

Becky

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Monday, July 07, 2014 9:29 AM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

# JULY 17, 2014 TRIAL - RESERVE/SETTLEMENT AUTHORITY

**RE: : Insured:** Radius Management Services, Inc – Radius Healthcare of Danvers
**Claimant:** Genevieve Calandro
**Policy No.:** ZY0004802
**Claim No.:** 3400031
**Date of Loss:** 8/16/08

**CASE SYNOPSIS:** Calandro, age 94, was admitted to Radius Danvers, MA on 12/13/07 from an assisted living facility in Detroit MI. It appears she remained at the facility with no unexpected issues until July 2008. At that time she began complaining of not feeling well. On 7/9/08 her physician ordered numerous lab tests and with the consent of Calandro's son, ordered antibiotic treatment, coccyx wound care and nutrition care with the goal of giving her comfort. On 7/11/08 Calandro fell out of her wheelchair in the dining room and struck her head receiving a laceration above her right eye. She was sent to the ER and admitted with diagnoses of posttraumatic intracranial intracerebral contusion, acute appendicitis, dehydration with renal failure and urosepsis. She remained hospitalized until 7/22/08 and was sent to another skilled facility for continuing antibiotic therapy. Her overall conditions continued to decline so that on 8/5/08 Calandro was sent to the hospital where she stayed until 8/12/08 without significant improvement. She was discharged to Hospice care and died on 8/16/08. Her cause of death was listed as Congestive Heart Failure with Acute Renal Failure as an underlying cause. Other conditions contributing to death were acute appendicitis, diabetes T2, and splenic abscess.

5

SED01390

**STATUS:** Last week defense counsel was advised of a Trial date for this case. They went forward with doing a Pre-Trial Report (attached #1) and I am supplementing their report to fill in other information for your benefit. This is a First State Management Group file that is completely manual and paper and was previously reported to TPA Services. Let me know if you cannot locate the file and I will get more information to you.

1. Plaintiff's counsel did no discovery on the case until April 2014. At that time they realized we had nobody to testify for the Radius entities because they had been dissolved and no longer legally existed. Even though we advised plaintiff's counsel of this, on April 7th (attached #2) they served us with notice to take 28 depositions in one day every 15 minutes. Obviously we were unable to comply with the request. This was followed up by plaintiff's 2-day suspended deposition of co-defendant Dr. David Wahl (treating physician and Medical Director). As you will see from the April 28th (attached #3) depo summary, co-defendant suffers from depression and let his medical license lapse. He is certainly not going to be a credible witness. In April plaintiff (the son of Calandro) testified sincerely and we believe a jury will find him likeable and a sympathetic witness.

2. Plaintiff served his expert disclosures on April 27th (attached #4) which we were waiting to obtain. With this information and the records he had Dr. Terrence O'Malley as our expert we were able to present the reports to our expert for a defense opinion (attached #5). He concluded that the plaintiff's death was as a result of a significant decline of her physical condition due to her pre-existing co-morbidities, advanced age and dementia. Both plaintiff's expert and defense experts agree that the decline began after Colandro left Radius and was at Cedar Glen facility.

3. Based on our inability to produce anybody to testify and the strength of our medical review for the causation issues, we filed the attached (#6) Stipulation. We are conceding to liability for a breach of the standard of care and will try the case on the injury and causation issues.

4. Plaintiff initially was looking at a global demand of $500K, but because of issues with co-defendant's carrier they increased the demand to $1M each. Defense counsel and I are very well known to plaintiff's counsel and have always had a good working relationship with them as they try to take over the plaintiff's nursing home litigation. PC is a professor for the Reptile strategy. We have tried to get him to settle out separately with us and he has yet to respond. Meanwhile, I was able to get co-defendant's carrier to contribute $250K to a global settlement of $500K in the event that plaintiff decides not to try the case.

5. Defendants have requested and received a Court Conference (in 2-days) on July 9th to determine if plaintiff will settle out or if they are going to try the case. The Trial is supposed to starts on a Thursday (odd day) and we are not certain whether it will be reached that day.

**RECOMMENDATIONS:** We will be attending the conference on the 9th with an attempt to see if we can settle out separately rather than to try the case. Co-defendant does not want to contribute any additional money until it is determined whether or not plaintiff will settle globally and for what amount. They have also filed a Stipulation to try the case on damages. It is our opinion that they are the target of the plaintiff. We do not believe that a jury will award more than $500K + $200K interest for a total of $700K worst case scenario. This would leave us at 50% or $350K. Our recommendation is to attend the Court Conference to attempt to settle out separately on the best figure up to $300K. Plaintiff's counsel may give us no choice by to try the case based on the amount they are demanding. This has happened with plaintiff's counsel in the past.

Therefore, I recommend posting a reserve of $350K and proceeding the Court Conference this Wednesday with $300K in authority to attempt settlement. Let's see what plaintiff will do.

MARY L BLAIR | PL Claims Manager
Sedgwick
40 Court Street, Suite 500

SED01391

Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

---

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

---

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SED01392

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT**
**CIVIL ACTION NO.**
**MICV2011-02874-D**

**GARRY CALANDRO, as Administrator of**
**the Estate of GENEVIEVE CALANDRO,**
**Plaintiff**

**vs.**

**RADIUS MANAGEMENT SERVICES, INC.,**
**RADIUS MANAGEMENT SERVICES, II, INC.,**
**ROUSH & ASSOCIATES, INC.,**
**RADIUS DANVERS OPERATING, LLC, and**
**RADIUS BD, INC.**
**Defendants**

## SUPPLEMENTAL JURY VERDICT FORM

What amount of money do you award as punitive damages for the gross negligence of the defendants which you found to be a substantial contributing factor in causing Ms. Calandro's death?

$ _12 MILLION - 515 THOUSAND 500 —_
Amount in figures

_____ Dollars
Amount in words

I hereby certify that the questions answered above were the answers of at least five-sixths (11 of 13) of the deliberating members of the jury.

_____
FOREPERSON OF THE JURY (signature)

_____          _____
Date                           Time

SED01393

**Blair, Mary**

| | |
|---|---|
| **From:** | Blair, Mary |
| **Sent:** | Monday, July 21, 2014 6:16 PM |
| **To:** | 'Shingleton, Becky A (Specialty Commercial + QA)' |
| **Subject:** | PLAINTIFF'S VERDICT |

**Importance:**          High

There was a plaintiff's verdict today a short time ago that has left us stunned.  Total of $1,425,000.

#1:  Was the negligence of Radius a substantial contributing factor in causing conscious pain and suffering to Calandro during her life?    YES   $675K

#2:  Was the negligence of Radius a substantial contributing factor causing the death of Calandro?  YES  $750K

There was also a question regarding gross negligence:  Did any negligence by Radius that you found to be a substantial contributing factor in causing Calandro's death constitute gross negligence?  The Judge has ordered the jury to return tomorrow to hear evidence from a Radius representative on cost reports. We are working on this right now and will return to Court tomorrow at 10:00 to address this matter.

I can be reached on my cell phone at 978-587-1499 if you have the chance to call me.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com |  *The leader in innovative claims and productivity management solutions*

---

**From:** Blair, Mary
**Sent:** Monday, July 21, 2014 8:20 AM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I attended the trial on Thursday and Friday and the defense has put on a strong case. We have been able to get plaintiff's death certificate were as a result of the care by Radius.  The medical expert testified that the former co-defendant doctor was the breach of the standard of care contributing to the death of the plaintiff and by mistake told the jury that the doctor has settled out already (greedy plaintiff?).  The second expert testified that he was a professional witness and attempted to put all the blame on the facility.  Plaintiff's testified on Friday -  nothing new from them.

Our expert is going to testify this morning (causation and injuries) and then the jury will charge the jury.  Plaintiff's counsel has used every attempt possible to disparage the facility and get liability issues before the jury.  A considerable amount of time was spent at sidebar because of this.

If you want to get a message to me, please use my voicemail.  No wifi at Court.

1

SED01394

I hope my next message to you is that we have a defense verdict.

**Mary L Blair** | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Wednesday, July 16, 2014 10:40 AM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services

You do.

*Becky A. Shingleton, SCLA*
*TPA Services Consultant*


The Hartford
6395 Pony Express Trail
Pollock Pines, CA 95726
Phone: (860) 547-3664
Fax: (860) 392 - 1846
Email: Becky.Shingleton@thehartford.com

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Tuesday, July 15, 2014 4:33 PM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

**Friday July 11, 2014:**  We filed answers to plaintiff's opposition and Motions in Limine.  A copy (without exhibits) is attached (#1) – very interesting and educational for the sake of plaintiff's counsel.  There was no activity by plaintiff's.  The Court called and changed the conference with the Judge from Tuesday to Monday.

**Monday July 14, 2014:**  Defense counsel appeared in Court to argue the Motions and it was very apparent that the Judge was not buying any of plaintiff's attempts to bring in liability or to pierce the corporate veil to bring in the senior Radius entities. Most all of the Motions were denied and plaintiff's counsel told the Court he was having trouble getting his experts to be available. Plaintiff's counsel advised the Court that he would be calling both experts and the son and his wife (plts).  He also advised that he would subpoena 25 Radius witnesses to testify and they Judge politely told him that he should only call the ones that had knowledge of this case (in fact none of them do) and that he should submit proffer of same.  Defense counsel agreed.

The Judge advised that he wants to impanel on Wednesday and start trial on Thursday.  The Judge also advised that he would not be able to hear the case on Friday and told us to have our expert ready for Monday.

**Tuesday July 15, 2014:**  In spite of what went on in Court yesterday, plaintiff's counsel submitted the attached (#2) Amended Witness List.  Doesn't he get it?  Discovery is done!  At any rate defense counsel has filed an Emergency Motion to Quash the subpoenas and a Motion for a Protective Order (#3). This was delivered timely to the Court this afternoon so it will be dealt with tomorrow when the parties convene before the Judge to sort out the final Motions and begin to impanel.  A copy of Defendant's Statement to the Jury is attached (#4).

SED01395

Plaintiff's counsel called defense counsel and wanted his consent to move the trial date. We said "no". Fortunately defense counsel has another trial starting on Wednesday of next week. We were notified by the Court this afternoon that there will be no extension of the trial date and that the Judge is available to hear the case on Friday.

Plaintiff's counsel is really scrambling now and is not doing his own reputation very good in the Massachusetts Court. We have had many cases with plaintiff's counsel over the years but this is really crazy. I am not going to attend tomorrow's motion hearing or the impaneling, but I will however attend the trial proceedings. Plaintiff's counsel has known me for many years and I do not want to be available with settlement authority (Do I still have $250K?) until after the trial starts. It is pretty much confirmed that the co-defendant settled for $250K and there is no way we should pay more than that amount and there is no way that plaintiff will accept anything lower than that amount. The choice then comes down to whether to take the case to verdict. Hopefully plaintiff's counsel will make the decision easier for us and not want a reasonable settlement. We believe we will do well with the jury and any award will be offset by what the co-defendant paid. So, if the jury awarded anything up to $250K we would pay nothing.

You thoughts and comments are welcome. I will let you know what transpires tomorrow.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 7:57 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

I just returned to the office after sitting with defense counsel and staff. They are preparing to answer over a dozen Motions in Limine propounded by plaintiff's counsel. Interestingly is that they involve things such as:

1. Sanctions against defense counsel for not producing all the records of the deceased from the facility. There is also an inference against defense counsel of spoliation.
2. A motion to spend extra time with the jurors during the voir dire process.
3. A motion to bring into trial the fact that the facility (now defunct) was being operated by several other entities who appeared to have shaved money from the facility.
4. Etc., etc.

Responses to the motions are being dictated tonight and I will have copies of them later tomorrow.

We discussed what plaintiff's counsel was trying to prove by bringing up the numerous liability issues when we have conceded to liability. Most of his tactics are aimed at liability – standard of care issues. We are fairly confident that we have a strong argument for causation and injuries. Plaintiff is hard pressed to avoid the co-morbidities and conditions of the 91 year old plaintiff.

We talked about a verdict range between $300K-$500K. It should also be noted that we will receive a credit for whatever the co-defendant paid. We surmise that they got a $250K settlement which would come off the top of any award against us.

I will give you another status tomorrow.

MARY L BLAIR | PL Claims Manager

3

SED01396

**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Blair, Mary
**Sent:** Thursday, July 10, 2014 1:58 PM
**To:** 'Shingleton, Becky A (Specialty Commercial + QA)'
**Subject:** RE: Estate of Calandro v. Radius Management Services

Current indemnity is $85K and expense is $35K.  It will be revised to $350K indemnity and $75K expenses.

Over the 4th of July weekend plaintiff's counsel sent an email to defense counsel (on vacation through Monday). It stated that if we did not make "an offer of more than $500K by 3:00 PM tomorrow (Monday)" then there would be no more talking and that they would try the case on the 17th.  There was no indication that $500K plus would even settle the case.  Defense counsel picked up the message when he returned to the office on Tuesday and contacted co-defendant's counsel to see where they stood.  It was at that time that we learned that the co-defendant's carrier settled directly with plaintiff's counsel.  Co-defendant's counsel said he had nothing to do with it and that he could not divulge the amount.

On Wednesday defense counsel sent an associate to the Court Conference as defense counsel was in New York.  Plaintiff's counsel is attempting to file a massive amount of motions that have nothing to do with the causation issues and more to do with liability and piercing the corporate veil.  We explained to the Judge that we had stipulated to liability and the Judge told plaintiff's counsel he did not understand what he was trying to achieve but that he would look at the motions. The Judge wants to meet with both sides again on Tuesday the 15th , since a settlement cannot be reached we will impanel on Wednesday the 16th and trial will begin on Thursday the 17th.

Defense counsel is responding to plaintiff's motions and I will be meeting with them in a few hours to go over everything and to determine a strategy.  I will get back to you later today.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907 Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

**From:** Shingleton, Becky A (Specialty Commercial + QA) [mailto:Becky.Shingleton@thehartford.com]
**Sent:** Tuesday, July 08, 2014 6:34 PM
**To:** Blair, Mary
**Cc:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** RE: Estate of Calandro v. Radius Management Services
**Importance:** High

Please let me know what the current indemnity and expense reserve is so that I can report the net increase.

Thanks,

SED01397

Becky

**From:** Blair, Mary [mailto:Mary.Blair@sedgwickcms.com]
**Sent:** Monday, July 07, 2014 9:29 AM
**To:** Shingleton, Becky A (Specialty Commercial + QA)
**Subject:** Estate of Calandro v. Radius Management Services

# JULY 17, 2014 TRIAL - RESERVE/SETTLEMENT AUTHORITY

**RE: : Insured:** Radius Management Services, Inc – Radius Healthcare of Danvers
**Claimant:** Genevieve Calandro
**Policy No.:** ZY0004802
**Claim No.:** 3400031
**Date of Loss:** 8/16/08

**CASE SYNOPSIS:** Calandro, age 94, was admitted to Radius Danvers, MA on 12/13/07 from an assisted living facility in Detroit MI. It appears she remained at the facility with no unexpected issues until July 2008. At that time she began complaining of not feeling well. On 7/9/08 her physician ordered numerous lab tests and with the consent of Calandro's son, ordered antibiotic treatment, coccyx wound care and nutrition care with the goal of giving her comfort. On 7/11/08 Calandro fell out of her wheelchair in the dining room and struck her head receiving a laceration above her right eye. She was sent to the ER and admitted with diagnoses of posttraumatic intracranial intracerebral contusion, acute appendicitis, dehydration with renal failure and urosepsis. She remained hospitalized until 7/22/08 and was sent to another skilled facility for continuing antibiotic therapy. Her overall conditions continued to decline so that on 8/5/08 Calandro was sent to the hospital where she stayed until 8/12/08 without significant improvement. She was discharged to Hospice care and died on 8/16/08. Her cause of death was listed as Congestive Heart Failure with Acute Renal Failure as an underlying cause. Other conditions contributing to death were acute appendicitis, diabetes T2, and splenic abscess.

**STATUS:** Last week defense counsel was advised of a Trial date for this case. They went forward with doing a Pre-Trial Report (attached #1) and I am supplementing their report to fill in other information for your benefit. This is a First State Management Group file that is completely manual and paper and was previously reported to TPA Services. Let me know if you cannot locate the file and I will get more information to you.

1. Plaintiff's counsel did no discovery on the case until April 2014. At that time they realized we had nobody to testify for the Radius entities because they had been dissolved and no longer legally existed. Even though we advised plaintiff's counsel of this, on April 7th (attached #2) they served us with notice to take 28 depositions in one day every 15 minutes. Obviously we were unable to comply with the request. This was followed up by plaintiff's 2-day suspended deposition of co-defendant Dr. David Wahl (treating physician and Medical Director). As you will see from the April 28th (attached #3) depo summary, co-defendant suffers from depression and let his medical license lapse. He is certainly not going to be a credible witness. In April plaintiff (the son of Calandro) testified sincerely and we believe a jury will find him likeable and a sympathetic witness.

2. Plaintiff served his expert disclosures on April 27th (attached #4) which we were waiting to obtain. With this information and the records we had Dr. Terrence O'Malley as our expert we were able to present the reports to our expert for a defense opinion (attached #5). He concluded that the plaintiff's death was as a result of a significant decline of her physical condition due to her pre-existing co-morbidities, advanced age and dementia. Both plaintiff's expert and defense experts agree that the decline began after Calandro left Radius and was at Cedar Glen facility.

3. Based on our inability to produce anybody to testify and the strength of our medical review for the causation issues, we filed the attached (#6) Stipulation. We are conceding to liability for a breach of the standard of care and will try the case on the injury and causation issues.

5

SED01398

4. Plaintiff initially was looking at a global demand of $500K, but because of issues with co-defendant's carrier they increased the demand to $1M each.  Defense counsel and I are very well known to plaintiff's counsel and have always had a good working relationship with them as they try to take over the plaintiff's nursing home litigation.  PC is a professor for the Reptile strategy.  We have tried to get him to settle out separately with us and he has yet to respond.  Meanwhile, I was able to get co-defendant's carrier to contribute $250K to a global settlement of $500K in the event that plaintiff decides not to try the case.

5. Defendants have requested and received a Court Conference (in 2-days) on July 9th to determine if plaintiff will settle out or if they are going to try the case. The Trial is supposed to starts on a Thursday (odd day) and we are not certain whether it will be reached that day.

**RECOMMENDATIONS:** We will be attending the conference on the 9th with an attempt to see if we can settle out separately rather than to try the case. Co-defendant does not want to contribute any additional money until it is determined whether or not plaintiff will settle globally and for what amount.  They have also filed a Stipulation to try the case on damages. It is our opinion that they are the target of the plaintiff.  We do not believe that a jury will award more than $500K + $200K interest for a total of $700K worst case scenario.  This would leave us at 50% or $350K.  Our recommendation is to attend the Court Conference to attempt to settle out separately on the best figure up to $300K.  Plaintiff's counsel may give us no choice by to try the case based on the amount they are demanding.  This has happened with plaintiff's counsel in the past.

Therefore, I recommend posting a reserve of $350K and proceeding the Court Conference this Wednesday with $300K in authority to attempt settlement. Let's see what plaintiff will do.

MARY L BLAIR | PL Claims Manager
**Sedgwick**
40 Court Street, Suite 500
Boston, MA 02108
Direct 617-994-0907  Fax 617-994-0930
Email Mary.Blair@sedgwickcms.com
www.sedgwickcms.com | *The leader in innovative claims and productivity management solutions*

---

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

---

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

*************************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information.  If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*************************************************************

---

6

SED01399

Sedgwick's messaging system has detected that you, as the email recipient, use an email system that supports and enables Transport Layer Security (TLS) email encryption. This message and its contents were transmitted securely to this recipient's email gateway via industry-standard TLS encryption.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information.  If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SED01400

4 20

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                        SUPERIOR COURT
                                                     CIVIL ACTION NO.
                                                     MICV2011-02874-D

GARRY CALANDRO, as Administrator of
the Estate of GENEVIEVE CALANDRO,
Plaintiff

vs.

RADIUS MANAGEMENT SERVICES, INC.,
RADIUS MANAGEMENT SERVICES, II, INC.,
ROUSH & ASSOCIATES, INC.,
RADIUS DANVERS OPERATING, LLC, and
RADIUS BD, INC.
Defendants

## JURY VERDICT FORM

**Negligence**

1.  Was the negligence of Radius Danvers Operating, LLC a substantial contributing factor
    in causing conscious pain and suffering to Genevieve Calandro during her life?

        ___X___  Yes                    _____  No

    *If your answer to Question #1 is "Yes," please answer Question #2.  If your answer to
    Question #1 is "No," you have reached a verdict.*

2.  Was the negligence of Radius Danvers Operating, LLC a substantial contributing factor
    in causing the death of Genevieve Calandro?

        ___X___  Yes                    _____  No

    *Please answer Question #3.*

SED01401

3. What amount of money will fairly compensate the Estate of Genevieve Calandro for her conscious pain and suffering caused by Radius Danvers Operating, LLC's negligence?

$ __*675,000*_____
Amount in figures

_____ Dollars
Amount in words

*If you answered "Yes" to Question #2, please answer Question #4.  If you answered "No" to Question #2, you have reached a verdict.*

4. What amount of money do you find will fairly compensate the next of kin for the loss of Genevieve Calandro's reasonably anticipated support, services, care, comfort, companionship, assistance, protection, society, guidance, counsel, and advice as a result of her death?

$ __*750,000*_____
Amount in figures

_____ Dollars
Amount in words

**Gross Negligence** *(If you answered "YES" to Question #2, please answer Question #5)*

5. Did any negligence by Radius Danvers Operating, LLC that you found to be a substantial contributing factor in causing Genevieve Calandro's death constitute gross negligence?

____X____ Yes                    _____ No

I hereby certify that the questions answered above were the answers of at least five-sixths (11 of 13) of the deliberating members of the jury.

_____
FOREPERSON OF THE JURY (signature)

_____        _____
Date                             Time

2

SED01402



SED02382