UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
_____
                              )
GARRICK CALANDRO, AS          )
ADMINISTRATOR OF THE ESTATE OF)
GENEVIEVE CALANDRO,           )
                              )
               Plaintiff,     )
v.                            )   Civil Action
                              )   No. 15-10533
SEDGWICK CLAIMS MANAGEMENT    )
SERVICES,                     )
                              )
               Defendant.     )
_____)
```

**MEMORANDUM AND ORDER**

September 6, 2017

Saris, C.J.

**INTRODUCTION AND BACKGROUND**

Plaintiff alleges that Sedgwick Claims Management Systems, Inc. ("Sedgwick") violated Mass. Gen. Laws ch. 176D and Mass. Gen. Laws ch. 93A ("Chapter 93A") by failing to make any kind of reasonable attempt, both pre-judgment and post-judgment, to settle the wrongful death case involving his mother who died at a nursing home. The underlying wrongful death case went to trial in state court and the jury returned a verdict of $1,425,000 in compensatory damages and $12,514,605 in punitive damages.

After the verdict, Plaintiff sent a demand letter under Chapter 93A to Sedgwick demanding $40 million. Sedgwick received

1

the letter on October 2, 2014 and responded to the letter on October 30, 2014 by offering $1,990,197. This offer appears to encompass the $1,425,000 compensatory award, prejudgment interest entered in the amount of $504,966, post-judgment interest through November 1, 2014 of $58,375 on the compensatory award, and the costs awarded to Plaintiff of $1,856. Plaintiff rejected the offer and filed this suit on December 5, 2014.

Defendant filed a motion for summary judgment on the ground that it made a prompt, fair, and equitable settlement offer within the "safe harbor" provided by Chapter 93A section 9(3). The Court denied Defendant's motion for summary judgment on April 25, 2017. Docket No. 86. The Court assumes familiarity with its summary judgment order. Calandro v. Sedgwick Claims Mgmt. Servs., No. 15-CV-10533, 2017 WL 1496915 (D. Mass. Apr. 25, 2017). The Court rejected Defendant's position that the loss-of-use of money standard was the appropriate benchmark for evaluating the reasonableness of the settlement offer in the separate Chapter 93A litigation. Id. at *4.

Defendant filed a Motion for Reconsideration on May 3, 2017. Docket No. 94. After a review of the cases cited and the arguments of the parties, the Court now reconsiders its previous summary judgment order and holds that the loss-of-use of money standard was the appropriate benchmark for evaluating the reasonableness of the settlement offer in the separate Chapter

2

93A litigation. Defendant's Motion for Reconsideration (Docket No. 94) is **ALLOWED.**

## DISCUSSION

### I. Safe Harbor

An insurance company commits an unfair claim settlement practice if it "[f]ail[s] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Mass. Gen. Laws ch. 176D, § 3(9)(f). "[A]ny person whose rights are affected by another person violating the provisions of [176D, § 3(9)(f)]" is entitled to bring an action to recover for the violation under Chapter 93A section 9. <u>Rhodes v. AIG Domestic Claims, Inc.</u>, 961 N.E.2d 1067, 1075 (Mass. 2012) (citing Mass. Gen. Laws ch. 176D, § 3(9)(f)).

Chapter 93A section 9(3) contains the following provision relating to the calculation of damages:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars,

> whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of [ch. 93A, § 2] or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated [ch. 93A, § 2]. <u>For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or non-existence of insurance coverage available in payment of the claim.</u>

The underlined portion of the statute was inserted by the 1989 amendment in response to state caselaw which "limited those damages subject to multiplication under c. 93A to loss of use damages, measured by the interest lost on the amount the insurer wrongfully failed to provide the claimant. This amendment greatly increased the potential liability of an insurer who wilfully, knowingly or in bad faith engages in unfair business practices." <u>Clegg v. Butler</u>, 676 N.E.2d 1134, 1142 (Mass. 1997).

Section 9(3) also provides that a person receiving a demand letter may, within thirty days of receipt of the letter, make a written tender of settlement. If the plaintiff rejects the offer, a defendant can "limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the <u>injury actually suffered</u> by the petitioner." Mass. Gen. Laws ch. 93A, § 9(3) (emphasis added). Defendant refers to this limitation on recovery as a "safe harbor." The meaning of the term "injury actually suffered" in

4

the safe harbor provision is disputed by the parties. Does it have the same meaning as "the amount of actual damages" in the 1989 amendment?

Interpretation of a statute begins with its plain language. See Anderson v. Nat'l Union Fire Ins. Co. of Pittsburgh PA, 67 N.E.3d 1232, 1237 (Mass. 2017). "All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose." Id. (internal citations omitted). The statute provides that it is for the purposes of the bad faith multiplication that the amount of the judgment is "the amount of actual damages to be multiplied." See Rhodes, 961 N.E.2d at 1078(noting the 1989 amendment only applies to damages "to be multiplied by the court"). The 1989 amendment does not state that this measure of actual damages should be used in the safe harbor provision.

My previous summary judgment ruling that "injury actually suffered" shall be based on the judgment as provided by the 1989 amendment was based on the rationale that an interpretation of the statute that provides a safe harbor for a post-judgment offer under the loss-of-use of money standard for pre-judgment

5

misconduct gives the insurer the perverse incentive to delay settlement in bad faith "hoping to force the claimant to accept a lower offer" knowing that worse-comes-to-worse, in the 30-day safe harbor post-judgment it can simply offer loss-of-use of money damages. See id. at 1081. This result would thwart the legislative purpose in enacting the 1989 amendment -- encouraging out-of-court settlements of insurance claims and putting "insurers on notice that if they wilfully fail to effectuate settlement on a case with high potential for a large judgment at trial, they are liable for up to treble damages based on that judgment amount." Id. at 1079, 1081 (holding in a different context that "it is clearly the case that if knowing or wilful prejudgment conduct causes injury, the proper measure of damages would be the underlying tort judgment."). The goal of the 1989 amendment does not dovetail with the goal of the safe harbor provision in situations involving non-party insurers of tortfeasors. Any fix, however, will have to come from the legislature, not the courts.

For purposes of the safe harbor, then, the Court must determine whether "the relief tendered was reasonable in relation to the injury actually suffered by the petitioner." Mass. Gen. Laws. Ch. 93A § 9(3). The reasonableness of the October 30, 2014 offer must be judged in relation to "the interest lost on the money wrongfully withheld by the insurer,

compensating claimants for the costs and expenses directly resulting from the insurer's conduct." Clegg, 676 N.E.2d at 1142. Under this standard, Sedgwick's offer of $1,990,197 was reasonable. While the parties disagree on Defendant's methodology in calculating this sum, there is no serious dispute that it is reasonable in relation to the injury actually suffered under the loss-of-use of money standard.[1] Accordingly, the safe harbor provision applies.

**II. The Trial**

The conclusion, though, does not mean that a trial on Plaintiff's claim for a punitive damages award is unnecessary. Under Rhodes, the Court does have the 93A section 9 statutory mandate to consider whether there was willful misconduct and whether bad faith multiplication is required. However, any award will be cabined by the safe harbor offer.

Defendant argues that no trial is necessary because the compensatory damages portion of the verdict would be offset by the settlement already made by Hartford, the nursing home's insurance provider. Plaintiff acknowledges that a partial offset

---

[1] In the circumstances of this case, Plaintiff argues for a multiplication of the full judgment including compensatory and punitive damages. Such a doubling or trebling can result in an award of punitive damages of about 20:1 or 29:1. A disproportionate award of this magnitude raises serious Due Process concerns. See generally BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996); St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63 (1919).

may be necessary but that the Hartford settlement did not fully resolve the claims against Sedgwick for its own alleged misconduct.

In November 2014, Hartford settled with Plaintiff for $16 million. Hartford engaged Sedgwick to be a third-party administrator for the underlying wrongful death case. This settlement reflected the $1 million policy limit and an additional $15 million. Of the total settlement, $1,425,000 is acknowledged to be for the compensatory damages in the underlying suit. Hartford obtained releases for the nursing home entities and itself. It did not obtain a release for Sedgwick.

"To the extent that a plaintiff has already received compensation for its underlying loss prior to the resolution of its G.L. c. 93A claim, such compensation has been treated as an offset against any damages ultimately awarded, rather than as a bar to recovery." Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 17 N.E.3d 1066, 1077 (Mass. 2014). The offset is to be made after the multiplication of any damages. Id. at 1082. The Court does not have sufficient information at this time to determine whether an award in this litigation against Sedgwick for its misconduct would be doubly paying plaintiffs for Hartford's misconduct. Unfortunately, a trial is necessary.

**ORDER**

For the reasons stated above, the Court finds that Defendant's offer in response to the Chapter 93A letter was reasonable and **ALLOWS** Defendant's Motion for Reconsideration (Docket No. 94). A trial on the merits and the offset issue will take place on October 30, 2017 at 9 A.M. A final pretrial conference will be held on October 11, 2017 at 3 P.M.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge